IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

Arthur Xing a/k/a Youyuan Xing,                    )
                                                   )
                        Plaintiff,                 )
                                                   )
            v.                                     )
                                                   )
Todd M. Lyons, Acting Director, U.S.               )
Immigration and Customs Enforcement,               )
                                                   )
                        Defendant.                 )
_____          )

**<u>DECLARATION OF ARTHUR XING</u>**

Pursuant to I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct:

1.    I am over eighteen years old, and I am competent to make this declaration.

2.    I am a citizen and national of the People's Republic of China.

3.    In the United States, I go by the name Arthur Xing because it is easier for my friends, colleagues, and professors to pronounce than my legal name, Youyuan Xing. This is common among Chinese students and professionals living in the United States.

4.    I first came to the United States to attend Skagit Valley College to get an Associate in Arts and Sciences degree in 2015.

5.    After I told Skagit Valley College I intended on attending, they sent me a Form I-20.

6.    Based on the Form I-20, I applied for an F-1 visa, attended a consular interview, at the U.S. Consulate in Beijing, and the U.S. Department of State issued me an F-1 visa on 02/06/2015.  The F-1 visa was good from 06/02/2015 to 05/28/2020.



7.      I then used my F-1 visa to travel to the United States where I sought admission on my F-1 visa at a lawful port of entry.

8.      U.S. Customs and Border Protection admitted me in F-1 status for a duration of status or "d/s" on 09/11/2015.

9.       I then pursued my associate's degree at Skagit Valley College.

10.     During my time there, however, I got into a fight with a partner and someone called the police on us. I was arrested, but I was immediately released and all charges dropped when my partner explained to the police that I was not violent towards her at all. They dismissed all charges.

11.     After my release from prison, I transferred to Whatcom Community College, where I graduated with honors with an Associate in Arts and Sciences degree. I then pursued a Bachelor's degree in Computer Science at UC Davis, followed by a Master's degree in Information Systems from Northeastern University.

12.     I completed my degree at Northeastern, and I applied for an optional practical training program that would let me work with a private company to get the necessary experience.

13.     I moved to Redmond, Washington, to attend my practical training program. Because I am a STEM major, I can get up to 3 years of practical training in my field.

14.     However, on April 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") terminated my SEVIS record.

15.     Because Northeastern still retains control over my F-1 visa, I received an email from their international student office letting me know that my SEVIS Record was terminated with the following notation:  "Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated."



16.     If the government had given me an opportunity to respond to their charge of termination, I would have provided documents to show that I never failed to maintain status because all charges were dismissed immediately.

17.     But they gave me no chance to respond.

18.     This termination immediately causes me a lot of harm.

19.     First, I lost my F-1 immigration status. I cannot continue my optional practical training program in Seattle, even though I am eligible for one year of practical training.

20.     When I looked at their website, ICE instructs students to "leave immediately" after such a termination or apply for reinstatement. But as a student on optional practical training, I cannot apply for reinstatement. So, ICE is telling me to leave the country immediately.

21.     Second, it is my understanding I am now accruing unlawful presence in the United States. This will hurt my chances at seeking re-admission in the future for work, pleasure, or investment.

22.     Third, the government's claim that a dismissed charge is a "crime" hurts me. This will hurt my chances because it impugns my integrity and stigmatizes me.

23.     Finally, this is causing me serious mental anguish. I am working very hard during my training program and I will lose the benefits of my work to date, if I am forced to abruptly leave the United States. The thought of losing all of the work is very hard to deal with and it is causing me serious mental anguish and harm.

24.     I plead with the Court to stop this termination so I can continue to work and leave the United States without any adverse impact on my ability to return lawfully in the future.

        Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___04 / 23 / 2025___          _____
                                           Arthur Xing

**Dropbox Sign**

Audit trail

| | |
|---|---|
| Title | Declaration |
| File name | Ex_A_-_Xing_Declaration_FINAL.pdf |
| Document ID | e4c7610a4241db9e8e1732be8adf4feaa95b8e31 |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

**SENT**
**04 / 23 / 2025**
11:08:30 UTC-4
Sent for signature to Arthur Xing (yyx5599@gmail.com) from brad@baniaslaw.com
IP: 73.131.78.236

**VIEWED**
**04 / 23 / 2025**
13:23:47 UTC-4
Viewed by Arthur Xing (yyx5599@gmail.com)
IP: 172.92.174.145

**SIGNED**
**04 / 23 / 2025**
13:49:12 UTC-4
Signed by Arthur Xing (yyx5599@gmail.com)
IP: 174.224.205.80

**COMPLETED**
**04 / 23 / 2025**
13:49:12 UTC-4
The document has been completed.

## Skagit County District and Municipal Courts

☐ State of Washington

☒ City of _Mount Vernon_

_____ Plaintiff,

vs.

_Youyan Xing_

_____ Defendant.

No: _MCO032356_

**MOTION TO DISMISS AND/ OR AMEND, AND ORDER ON MOTION**

FILED
JUN 2 7 2017
MOUNT VERNON
MUNICIPAL COURT

**COMES NOW the** ☒ Plaintiff ☐ Defendant and moves the Court to grant the following relief:

☒ Dismiss the charge of _Assault 4 - DV_

☐ Amend the charge of _____ to _____

☐ Quash warrant ☒ Waive warrant fees

☐ _____

**NO CASE WILL BE DISMISSED OR CLOSED UNLESS
ALL OUTSTANDING WARRANT FEES ARE PAID**

**THIS MOTION is made for the following reason(s):**

☐ Part of disposition of Case # _____   ☐ Not able to obtain sufficient evidence to convict.

☒ Interest of Justice _____   ☒ Other: _Compliance with SLA_

DATED this _27_ day of _June_, 20_17_.

**Counsel for Plaintiff:**

☒ Moving Party ☐ Consents ☐ Opposes

_____

WSBA # _28411_

**Counsel for Defendant:**

☐ Moving Party ☒ Consents ☐ Opposes

_____

WSBA # _51450_

Certified to be a true copy
of the original on file in
Mount Vernon Municipal Court

_L. Queen_   _3-14-2019_
Clerk                Date

**Defendant:**

_Youyan Xing_

***************   ***************

**ORDER ON MOTION**

☒ The above motion is ☒ GRANTED ☐ DENIED ☐ DEFENDANT FTC/FTA ☐ ISSUE WARRANT

☐ RESET to _____ 20_____ at _____ M for _____

DATED _6/27/17_   _____
                            _JUDGE/COMMISSIONER_

H:\forms 2008\motion to dismiss amend (9-2013).docx



April 18, 2025

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
California Service Center
2642 Michelle Drive
Tustin, CA 92780

**U.S. Citizenship
and Immigration
Services**





Form I-129,
Petition for a Nonimmigrant Worker

## PREMIUM PROCESSING

## NOTICE OF INTENT TO DENY

On March 6, 2025, your organization, ███████████████████████████, filed a Form I-129,
Petition for a Nonimmigrant Worker (Form I-129), with U.S. Citizenship and Immigration Services
(USCIS), seeking to classify ███████████ (beneficiary) as a temporary worker in a specialty
occupation (H-1B) under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (INA).

Section 101(a)(15)(H)(i)(b) of the INA relates to an alien:

> ...who is coming temporarily to the United States to perform services...in a specialty occupation
> described in section 214(i)(1)..., who meets the requirements for the occupation specified in
> section 214(i)(2)..., and with respect to whom the Secretary of Labor determines and certifies to
> the Attorney General that the intending employer has filed with the Secretary an application
> under 212(n)(1).

You seek new employment for the beneficiary and requested that USCIS change the beneficiary's
status.

You stated on the petition that you are a public school district with 583 employees. You seek to
employ the beneficiary as an Elementary Teacher.

In visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefits
sought. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

USCIS reviewed the initial record of evidence for eligibility in accordance with the INA; Title 8, Code
of Federal Regulations (8 CFR); and any other applicable statutes and regulations, and could not
determine whether you had established eligibility for the benefit sought.

In accordance with *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010), USCIS has examined the
evidence of record for relevance, probative value, and credibility, both individually and within the
context of the totality of the evidence, and determined that you have not established eligibility for the
requested classification by a preponderance of the evidence.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online

Accordingly, USCIS intends to deny the petition and any change of status for reasons discussed below. In accordance with 8 CFR 103.2(b)(16)(i), when USCIS intends to make a decision that will be adverse to you and it is based on information of which you are unaware, USCIS must notify you and allow a period of time for rebuttal.

We have encountered potentially adverse information related to the beneficiary. In order to continue processing your application or petition, we require an updated address for the beneficiary so that we may collect biometric data.

### Maintenance of Status

The first issue to be discussed is whether the beneficiary maintained the beneficiary's nonimmigrant status.

INA 248(a) states, in part:

> The Secretary of Homeland Security may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status...

8 CFR 248.1(b) states:

> Except in the case of an alien applying to obtain V nonimmigrant status in the United States under §214.15(f) of this chapter, a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed, except that failure to file before the period of previously authorized status expired may be excused in the discretion of USCIS, and without separate application, where it is demonstrated at the time of filing that:
>
>> (1) The failure to file a timely application was due to extraordinary circumstances beyond the control of the applicant or petitioner, and USCIS finds the delay commensurate with the circumstances;
>>
>> (2) The alien has not otherwise violated his or her nonimmigrant status;
>>
>> (3) The alien remains a bona fide nonimmigrant; and
>>
>> (4) The alien is not the subject of removal proceedings under 8 CFR part 240.

USCIS records show that the beneficiary attended ▮▮▮▮▮▮ University as an F-1 nonimmigrant from August 7, 2022 to May 11, 2024 (▮▮▮▮▮▮▮). The beneficiary was approved for post-completion Optional Practical Training (OPT) from July 10, 2024 to July 9, 2025 (▮▮▮▮▮▮▮▮). However, records show that the Department of State revoked the beneficiary's F-1 visa on March 20, 2025. According to the beneficiary's SEVIS record (▮▮▮▮▮▮) their F-1 nonimmigrant status was terminated on April 10, 2025 because of the criminal records check and the revocation of their F-1 visa.

You filed the current petition on March 6, 2025. It appears that the beneficiary is not in valid F-1 nonimmigrant status, as such, the request for a change of nonimmigrant status may not be approved. If the petition is approved, it will be forwarded to a U.S. consulate abroad for visa processing. Therefore, identify a location abroad for visa notification.

As such, the beneficiary failed to maintain the beneficiary's nonimmigrant status.

**CRIMINAL OFFENSES**

Records show the beneficiary has been arrested. You provided no evidence to account for, and explain, the circumstances surrounding the beneficiary's arrest.

USCIS records currently indicate that the beneficiary's criminal history as follows:

- The beneficiary's arrest and charges on February 22, 2025.

You must provide documentation about the beneficiary's arrest, the associated charges, and the subsequent dispositions for each charge, whether dropped, suspended, or resulting in a conviction.

Please submit certified copies of all court and police records showing the charges and dispositions for every arrest listed above. This evidence is requested even if the beneficiary's criminal records were sealed, expunged, cleared, or otherwise closed. Certified court dispositions should be issued from the court that held jurisdiction over the beneficiary's criminal proceedings.

The documents you provide should address each of the following:

a) The final disposition or outcome (sentence, probation, dismissal, etc.) of all charges since the beneficiary's admission as a F-1 nonimmigrant. The charges and dispositions must be specifically identified, listing only numeric citations or legal codes is not sufficient unless provided with clarifying documentation.

b) If the beneficiary was convicted of any charges, you should also provide evidence showing whether the charge for which the beneficiary was convicted was classified as a felony or misdemeanor. You may submit a copy of the pertinent statute, sentencing guideline, or statement from the court clerk or police department for this purpose.

If the beneficiary's conviction resulted in an alternative sentencing program, suspended sentence, or the participation in a rehabilitative program (such as a drug treatment or community service program), you should submit an original or court certified copy of the beneficiary's sentencing record for each incident, and evidence that the beneficiary completed their sentence. Specifically, you should submit:

a) An original or certified copy of the beneficiary's probation or parole record, or
b) Evidence that the beneficiary completed an alternative sentencing program, suspended sentence or rehabilitative program.

If a final disposition is not available, the beneficiary should obtain a certified letter from the court confirming the lack of court records. All submitted documentation should be original or a certified copy. Certified copies must include a court seal stamp on the document.

Please note, USCIS will consider all credible evidence submitted in support of your Form I-129, but will determine, in its sole discretion, the evidentiary value of all documentation submitted.

You are afforded 30 days from the date of this notice to submit additional information, evidence or arguments to support the petition. Additionally, when USCIS serves a notice by mail, three days are added to the prescribed period in which to respond. Any such evidence or arguments will be carefully reviewed prior to a final determination in this matter. Failure to respond, however, will result in adjudication of the petition on the basis of the record, as it is now constituted, including the information referred to above.

www.uscis.gov

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online

**Your response must be received in this office by May 21, 2025.**

**PLACE THE ATTACHED COVERSHEET AND THIS ENTIRE LETTER ON TOP OF YOUR RESPONSE.**

Sincerely,

███████████

SCOPS Deputy Associate Director of Adjudications

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

www.uscis.gov

**PREMIUM PROCESSING**
**COVERSHEET**
**SCANNING REQUIRED**
PLEASE RETURN THE REQUESTED INFORMATION AND
ALL SUPPORTING DOCUMENTS **WITH**
**THIS PAGE ON TOP TO:**
**USCIS TSC**
**Attn: RFE/NOIT/NOIR/NOID RESPONSE**
**6046 N Belt Line Rd. STE 111**
**Irving, TX 75038-0011**
If your response is 25 pages or less, you have the option to reply by fax at **(802) 860-6932**.
If you have any questions, you may contact the Premium Processing Team via e-mail
at: **CSC-PREMIUM.PROCESSING@USCIS.DHS.GOV**
or call our toll-free number **(866) 315-5718**.

Please check the appropriate box regarding if there is a new Form G-28, Notice of Entry of Appearance as
Attorney or Accredited Representative, additional fees, additional forms, etc.  Please place the new Form
G-28, additional fees, additional forms directly under this sheet.

**Yes, there is:**

☐ **A New G-28**          ☐ **Additional Fees**

☐ **Additional Forms**    ☐ **Other:**

If you have moved, write your current address in the blank area below. Please be sure to write clearly.

| (Select appropriate check box) | |
|---|---|
| ☐ **Applicant/Beneficiary** | ☐ **Petitioner** |
| **New Address:** | |

As required by Title 8, Code of Federal Regulations (8 CFR) section 265.1, *Reporting change of address*:
Except for those exempted by section 263(b) of the Act, all aliens in the United States required to register
under section 262 of the Act must report each change of address and new address within 10 days of such
change in accordance with instructions provided by USCIS.

## NOTICE OF INTENT TO DENY

Form I-129, Petition for a Nonimmigrant Worker

www.uscis.gov

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

California Service Center
P.O. Box 30113
Tustin CA 92781

quadient

FIRST-CLASS MAIL
IMI
$000.69

US POSTAGE



**U.S. Citizenship
and Immigration
Services**



685083:2095 C012



U.S. Department of Homeland Security
P.O. Box 10539
Laguna Niguel, CA 92607-1053

**U.S. Citizenship
and Immigration
Services**

Date: MAY 0 5 2017



Refer to file no.:

### NOTICE OF DECISION

This notice is in reference to the Form I-539, Application to Extend/Change Nonimmigrant Status, which you filed with U.S. Citizenship and Immigration Services (USCIS) on October 17, 2016, requesting reinstatement to F-1 student status under 101(a)(15)(F) of the Immigration and Nationality Act (INA).

In order to be reinstated to F-1 student status, an applicant must prove that he or she meets the following requirements:

Title 8 of the Code of Federal Regulations (8 C.F.R.) 214.2 (f)(16)(i) states:

    Reinstatement to student status.

    General. The district director may consider reinstating a student who makes a request for reinstatement on Form I-539, Application to Extend/Change Nonimmigrant Status, accompanied by a properly completed SEVIS Form I-20 indicating the DSO's recommendation for reinstatement (or a properly completed Form I-20A-B issued prior to January 30, 2003, from the school the student is attending or intends to attend prior to August 1, 2003). The district director may consider granting the request if the student:

    (A) Has not been out of status for more than 5 months at the time of filing the request for reinstatement (or demonstrates that the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances);

    (B) Does not have a record of repeated or willful violations of Service regulations;

    (C) Is currently pursuing, or intending to pursue, a full course of study in the immediate future at the school which issued the Form I-20;

    (D) Has not engaged in unauthorized employment;

    (E) Is not deportable on any ground other than section 237(a)(1)(B) or (C)(i) of the Act; and

    (F) Establishes to the satisfaction of the Service, by a detailed showing, either that:

        (1) The violation of status resulted from circumstances beyond the student's control. Such circumstances might include serious injury or illness, closure of the institution, a natural

Page 2

disaster, or inadvertence, oversight, or neglect on the part of the DSO, but do not include instances where a pattern of repeated violations or where a willful failure on the part of the student resulted in the need for reinstatement; or

(2) The violation relates to a reduction in the student's course load that would have been within a DSO's power to authorize, and that failure to approve reinstatement would result in extreme hardship to the student."

8 C.F.R. 103.2(a)(1) state in pertinent part:

Every benefit request or other document submitted to DHS must be executed and filed in accordance with the form instructions, notwithstanding any provision of 8 CFR Chapter 1 to the contrary, and such instructions are incorporated into the regulations requiring its submission...

The instructions for Form I-539 Instructions state in pertinent part the following about initial evidence for F-1 reinstatement requests:

To request a change to F-1 status or apply for reinstatement as an F-1 student . . . Your application must include your original Form I-20, Certificate of Eligibility for Nonimmigrant Student issued by the school where you will study...

You seek reinstatement to F-1 student status to attend Madison Area Technical College. You submitted a Student and Exchange Visitor Information System (SEVIS) Form I-20 for reinstatement signed by a Designated School Official (DSO) on September 14, 2016. Your SEVIS record shows that your status was terminated on September 8, 2014. Your application was not stamped as received and properly filed until October 17, 2016.

With your I-539 application you did not submit a statement explaining why you were out of status over five months at the time you filed this application. As such, USCIS requested that you submit, among other documentation a detailed explanation as to why you failed to file within the five month period. In response to the RFE, you submitted a statement explaining that you were out of status over five months at the time you filed this application because when you applied to attend Madison Area Technical College in September of 2014, you did not know that you needed a Form I-20. However, before attending Madison Area Technical College, in May of 2014, you applied to attend Florida Southern College and then you obtained a Form I-20. You did not obtain proper permission to withdraw from Florida Southern College to attend Madison Area Technical College.

You did not submit sufficient explanation for being out of status over five months at the time you filed this application or any documentary evidence to demonstrate that the failure to file within the five-month period was the result of exceptional circumstances and that you filed the request for reinstatement as promptly as possible under these exceptional circumstances.

Based on the evidence presented above, you do not appear to be eligible for reinstatement to F-1 student status due to your untimely filing of your reinstatement application. Pursuant to INA 291, the burden of proof in these proceedings rests solely with you, the applicant. As such, your application is denied for the above-stated reason.

This decision leaves you without lawful immigration status, and you are therefore present in the United States in violation of the law. You are required to depart the United States. Remaining in the United States without authorization may affect your ability to return to the United States in the future.

There is no appeal to this decision. However, pursuant to 8 CFR 103.5, a motion can be filed on Form I-290B. Such motion must be accompanied by the proper fee and filed within 30 days of this notice. In



Page 3

addition, pursuant to 8 C. F.R. 103. 8(b), three days shall be added to the prescribed 30-day period when a USCIS notice is served by mail.

For questions concerning immigration services and benefits, you may call 1-800-375-5283 or for TTY 1-800-767-1833.

Sincerely,

Kathy A. Baran
Director, California Service Center

*Student and Exchange Visitor Program*

**U.S. Department of Homeland Security**
SEVP MS 5600
500 12th Street, SW
Washington, DC 20536-5600



U.S. Immigration and Customs Enforcement

June 7, 2010

**POLICY GUIDANCE FOR:**     Designated School Officials

**FROM:**     Student and Exchange Visitor Program – Policy Branch

**SUBJECT:**     Policy Guidance 1004-04 –Visa Revocations

**AUTHORITIES:**     *Immigration and Nationality Act, section 244(b)(1); 8 CFR 214.2(f)(6) and (9); 8 CFR 214.2(m)(9) and 8 CFR 214.3(g)(2)*

**Comments:**

To comment on this Policy Guidance or suggest a change, please e-mail SEVIS.source@dhs.gov with "Policy Guidance 1004-04 Comment" entered in the subject line within 60 days of the date of this guidance.

**Purpose:**

The Student and Exchange Visitor Program (SEVP) wants to ensure that designated school officials (DSOs) are aware of the visa revocation process, how to record such an action in a Student and Exchange Visitor Information System (SEVIS) record, and how to respond to law enforcement inquiries involving students whose visas have been revoked.[1]

---

[1] This guidance represents SEVP's current thinking on this topic. It is advisory in nature and informational in content. Its purpose is to provide guidance to the SEVIS user community and to all SEVP personnel involved in the adjudication and review of petitions for SEVP certification and appeals.

It reflects the position on, or interpretation of, the applicable laws or regulations DHS has published as of the date of this publication, which appears on the first page of the policy guidance. This guidance does not, in any way, replace or supersede those laws or regulations. Only the latest official release of the applicable law or regulation is authoritative.

This guidance does not create or confer any rights for or on any person and does not operate to bind SEVP or the public.

SEVP has not provided previous guidance on this issue. This policy remains in effect until specifically superseded by a subsequent SEVP policy guidance or directive, or until SEVP amends the specifically cited authorities, above, with respect to this issue.


**Background:**

Visa revocations are an important tool in maintaining the security of our borders. Since September 11, 2001, the Department of State (DoS) has revoked 1,250 visas based on information suggesting possible terrorist activities or links. DoS receives a continuous stream of information that affects the eligibility of aliens to hold visas. Subsequent to an alien receiving a visa, the DoS uses any information received that calls into question the alien's suitability as a visa holder, such as a potential threat to the security of the United States, to revoke a visa. DoS revokes the visa promptly and relies on the visa application process to resolve identity and other questions at a later time, should the visa holder wish to reapply for a visa.

The revocation process supplements the terrorist watch-listing work of the Terrorist Screening Center (TSC), which provides the vast majority of the derogatory information on specific individuals. The TSC updates the DoS's Consular Lookout and Support System (CLASS) database with the derogatory information about an alien. If it appears that DoS may have issued a visa to a watch-listed alien, TSC forwards the derogatory information to the Visa Office (VO) of the Bureau of Consular Affairs, which manages the visa-revocation process for DoS.

Once it determines a possible link between the alien and the terrorist-related information, DoS formally revokes the visa. As soon as VO receives the derogatory information from TSC or other agencies, it places a revocation lookout (VRVK code) in CLASS, which replicates in real time in the Department of Homeland Security's (DHS) Interagency Border Inspection System, making the lookout available to DHS inspectors at ports of entry into the United States.

The alien does not receive advance notice that DoS is considering revoking the visa. After DoS revokes the visa, the relevant consular post attempts to contact the alien. However, the consular posts are not in a position to determine whether the alien is in the United States or to find the alien and provide him or her with notice that the revocation has occurred.

If the holder of the revoked visa reapplies for a visa at one of the embassies or consulates abroad, a consular officer carefully screens the application and, after consultation with DoS, determines eligibility. DoS might issue a new visa if it determines that the information which led to the revocation does not pertain to the alien or that the alien is in any event eligible.

**DHS Reaction to DoS Visa Revocation:**

Immigration and Customs Enforcement's Compliance Enforcement Unit (CEU) receives notification from DoS when DoS revokes a nonimmigrant's visa on national security grounds. In turn, CEU gathers additional information to prepare the case for a field investigation, if warranted. If it finds that DoS revoked an F or M visa on national security grounds, and the student is not present in the United States, CEU refers the nonimmigrant student's information to the SEVP liaison assigned to CEU.

**DSO Actions in Response to Visa Revocation Notice:**

The SEVP/CEU liaison provides a DSO with a list of the visa revocations at the DSO's school. A visa revocation may occur after the visa is issued but before the nonimmigrant enters the United States or upon arrival at a port of entry or while the nonimmigrant is in the United States.

If a DSO receives a visa revocation notice, the DSO should take the following actions in the student's SEVIS record:

- If the nonimmigrant was entering on an initial Form I-20, "Cancel" the record upon notification.

- If the nonimmigrant student was re-entering the United States to continue a program of study, enter "Terminated" in the SEVIS record for "No Show."

Some circumstances require revocation of a nonimmigrant student's visa while the nonimmigrant is in the United States and in status. Visa revocation is not, in itself, a cause for termination of the student's SEVIS record.

It is possible that neither the student in question nor the DSO has knowledge of the visa's revocation. However, law enforcement authorities may contact the school officials to verify whether the student is maintaining status.

Contact SEVP if you have questions.

1              IN THE UNITED STATES DISTRICT COURT
                    DISTRICT OF COLUMBIA
2

3   AKSHAR PATEL                  ) CIVIL NO.:
                                  ) 25-1096-ACR
4           Plaintiff,            )
        vs.                       )
5                                 )
    TODD M. LYONS,                )
6                                 ) April 16, 2025
            Defendant.            ) Washington, D.C.
7   _____ ) 10:45 a.m.

8

9                   Transcript of Motions Hearing
                Before the Honorable Ana C. Reyes
                  United States District Judge
10

11  APPEARANCES:

12  For the Plaintiff:   Steven A. Brown, Esquire
                         Reddy Neumann Brown, P.C.
13                       10333 Richmond Avenue, Ste 1050
                         Houston, TX 77042

14                       Bradley B. Banias, Esquire
                         Banias Law LLC
15                       602 Rutledge Avenue
                         Charleston, SC 29403
16
    For the Defendant:   Joseph F. Carilli , Jr., , Esquire
17                       United States Attorney's Office
                         Civil Division
18                       601 D Street, NW
                         Washington, DC 20001
19

20  Also Present:  MacKlin Everly
                   Andre Watson

21  Reported by:   Christine T. Asif, RPR, FCRR
                   Federal Official Court Reporter
22                 333 Constitution Avenue, NW
                   Washington, D.C. 20001
23                 (202) 354-3247

24
    Proceedings recorded by machine shorthand; transcript produced
25  by computer-aided transcription

```
1                    P R O C E E D I N G S

2              THE CLERK:  This is civil action 25-1096, Akshar

3    Patel versus Todd M. Lyons.

4              Will the parties please identify themselves for the

5    record.

6              MR. BROWN:  Good morning, Your Honor.  Steven Brown

7    and Brad Banias for the plaintiffs.

8              THE COURT:  Government counsel.

9              MR. CARILLI:  Joseph F. Carilli for the

10   Government.

11             THE COURT:  In the future gentleman if I or any

12   court orders you to meet and confer, there are two components

13   of a meet and confer meet and confer.  One that you actually

14   meet, which you do not do over email.  And two is that you

15   actually confer.  The second I saw your --

16             Mr. Carilli, could you please look up and not be

17   writing whatever you're writing right now and listen to me.

18             The second I saw your first joint status report I

19   knew immediately that none of you had done either of those two

20   things, which is why I asked for the further report which

21   confirmed everything that I thought.  Now did you all meet and

22   confer by video this morning?

23             MR. BROWN:  Yes, Your Honor.

24             THE COURT:  How long did the meet and confer last?

25             MR. BROWN:  About 40 minutes, Your Honor.
```

1          THE COURT:  Okay.  Did you guys make any progress?

2          MR. BROWN:  Not towards a resolution, Your Honor,

3     but I think we have a understanding of each -- better

4     understanding of each other's position, Your Honor.

5          THE COURT:  All right.  So Mr. Carilli, can you

6     explain the SEVIS system to me exactly what it is and what it

7     does.

8          MR. CARILLI:  SEVIS is an information system that

9     was established under 8 U.S.C., I'm sorry --

10          THE COURT:  1372.

11          MR. CARILLI:  1372, excuse me.  That was established

12     post 9/11 for the Secretary of Homeland Security to be able to

13     monitor individuals who are in the country in F, M, and J

14     status.  Obviously, the issue here is the portions of SEVIS

15     that are used by F.  Immigration and Customs Enforcement

16     maintains that system under that statute and it is used to,

17     like I said, monitor and then also for individual schools to

18     be able to provide information about F-1 students that are

19     enrolled at their schools.

20          THE COURT:  Okay.  So the purpose of SEVIS is to

21     monitor people who are here in part on F-1 visas?

22          MR. CARILLI:  Yes, Your Honor.

23          THE COURT:  Okay.  So what's the impact of taking

24     someone off of SEVIS, why would we not want to monitor

25     somebody?

1          MR. CARILLI:  Well, to clarify, Your Honor, what

2     occurred here was, in SEVIS there is a drop down menu that

3     allows you to list active -- there's categories about an

4     individual.  So the record wasn't deleted, it's just in SEVIS

5     that it was changed from active to terminated.

6          THE COURT:  Okay.  And what's the consequence of

7     moving someone from active to terminated?

8          MR. CARILLI:  The consequence is exactly as

9     described, that it changed the status of the individual inside

10    SEVIS.  It did not change the individual's immigration

11    status.

12         THE COURT:  So what's the impact of it being changed

13    within SEVIS, why -- what happens when that occurs?

14         MR. CARILLI:  I mean, it's an indication that in

15    system that the individual -- that their record in the system

16    has been -- the status is terminated.  I can't --

17         THE COURT:  No, I understand that.  But what is the

18    impact -- what's the impact of it having been terminated?  If

19    there's no impact, then I'm sure you have no problem moving it

20    back to active and we can all go home; right?

21         MR. CARILLI:  Well, I think that the government

22    has -- ICE has indicated they're not going to change it back.

23    I think that --

24         THE COURT:  That wasn't my question.  I'm not really

25    concerned what ICE thinks they can and can't do, I'm concerned

1    with what I can do.  And my understanding from the plaintiff's

2    argument is that a change of SEVIS from active to terminated

3    either automatically cancels their F-1 visa or is a precursor

4    to canceling their visa.  I'm not quite sure what the argument

5    is, but I think it's the first.  And the government says no,

6    no, no, that has nothing to do with immigration.  So if it has

7    nothing to do with immigration, it must have something to do

8    with something, or else we would all change it back to active

9    and we could all go home.

10          So explain to me please what the consequence is of

11   changing something from active to inactive or terminated.  And

12   do not say it's terminated within the SEVIS system, because

13   that is not an answer to my question.  What is the impact of

14   terminating somebody within SEVIS?

15          MR. CARILLI:  I'm not prepared to answer that --

16          THE COURT:  How are you not prepared to answer --

17   I'm sorry how are you not here prepared to answer that

18   question?  That's the only question in this litigation, Mr.

19   Carilli.

20          MR. CARILLI:  The question here is whether --

21          THE COURT:  No, Mr. Carilli -- Mr. Carilli.  I'm the

22   one who decides what the questions here are, okay, not you.

23   Now, obviously, the first question in this case is what is the

24   practical import of canceling someone within SEVIS.  And if

25   you don't know, we're all going to wait here while you call

```
1    someone and find out, because I'm not going to get jerked

2    around by you telling me you're not prepared to answer the key

3    question in this case.

4            What is the impact of someone being terminated

5    within SEVIS?

6            MR. CARILLI:  I do not know --

7            THE COURT:  All right.  Mr. Carilli, that's fine --

8    Mr. Carilli, that's totally fine.  We're all going to stay on

9    the phone here.  You're going to go some other phone or you're

10   going to put yourself on mute.  And you're going to call your

11   client and you're going to ask.  And we're going to stay here

12   until you get an answer.

13           MR. CARILLI:  Yes, Your Honor.

14           THE COURT:  So, gentleman, you guys can hang back

15   and we'll hear from Mr. Carilli when he's done.  And I'm going

16   to stay on the bench while you get this done.  And if you

17   can't get someone on the phone.  Get the next person on the

18   phone.  Because I'm going to stay here until you get someone

19   on the phone.  I'm ordering you to get your client on the

20   phone.  So we're all going to stay here while you do that.

21           And you can put yourself on mute and turn yourself

22   off the video if you would like Mr. Carilli.

23           Gentleman, you guys can put yourselves off video if

24   you want to, just stay around in case we get back from him.

25   And Ms. White mute, please.  Turn off my video.
```

1          (Pause in the proceedings from 10:53 a.m. to 12:06

2     p.m.)

3          THE COURT:  Mr. Carilli, where are we?

4          MR. CARILLI:  Your Honor, I'm still waiting for a

5     response from the Agency, in terms of the practical effects of

6     changing the record in SEVIS to terminated.

7          THE COURT:  Can you explain to me please why it has

8     taken over an hour and I still don't have an answer, to what

9     must be the most obvious simple question that this case

10    presents as to what happens when someone gets taken off of

11    SEVIS?  I mean, you know, why there's a delay, right, Mr.

12    Carilli?  Do you want to tell me why there's a delay or do you

13    want to me to tell you why there's a delay?

14         MR. CARILLI:  Your Honor, I don't know why there's a

15    delay.

16         THE COURT:  Well, I'll tell you why there's a delay,

17    Mr. Carilli, because what happens when you take someone off of

18    SEVIS and you terminate them they lose their status and that's

19    not something you all want to tell the Court.  Now, why you

20    all don't want to tell the Court, I don't know.  But we're

21    going to get an answer to the question.

22         So I want agency counsel to stop whatever

23    conversations she's having or he's having right now and get on

24    the video so I can ask agency counsel what's going on.

25    Because we asked -- apparently agency counsel was on the phone

1    no later than 11:40 having this conversation.  And it's not a

2    25-minute answer.  So get agency counsel on the phone.  And

3    after we get agency counsel on the phone, if I'm not

4    satisfied, we're going to have the declarant Mr. Watson come

5    to my courtroom and testify today.  So get agency counsel on

6    the phone, please.

7            MR. CARILLI:  Yes, Your Honor.  Honor, excuse me,

8    before I go off video may I go off video to --

9            THE COURT:  Yeah.  Sure.  Of course.

10           MR. CARILLI:  Thank you, Your Honor.

11           (Pause in the proceedings from 12:08 p.m. to 12:19

12    p.m.)

13           THE COURT:  Mr. Carilli, what's going on?

14           MR. CARILLI:  Your Honor, I just forwarded the

15    invite to one of the agency counsel.  Agency counsel indicated

16    there was also going to be another individual that was going

17    to join.  So I have been waiting for that second name, but I

18    just forwarded it to the person that told me --

19           THE COURT:  Okay.  While we're waiting for them, is

20    the government's position that Mr. Patel's F-1 visa is in

21    effect or not in effect?

22           MR. CARILLI:  Mr. Patel's F-1 visa is no longer

23    valid.  So -- and I think there's a different genre between a

24    individual who has a valid visa which allows them to seek

25    admission into the United States versus when an individual has

1    lawful status after they have been admitted into the United
2    States.
3              THE COURT:  Okay.  Is he lawfully in the United
4    States right now?
5              MR. CARILLI:  The government's position is that he
6    has not -- ICE has not taken -- has not terminated his F-1
7    status.  And for ICE to be able to terminate his F-1 status,
8    they would have to put him in 1229a removal proceedings.
9              THE COURT:  Is he lawfully in the United States
10   right now, yes or no?
11             MR. CARILLI:  I'm not able to answer that question,
12   Your Honor.
13             THE COURT:  How are you not able to answer that
14   question?  What does that even mean?  He's either here legally
15   or he's not here legally.  You're the government's lawyer.  Is
16   he here legally?  I mean, how is Mr. Patel supposed to know if
17   he's here legally if you don't even know if he is here
18   legally?
19             MR. CARILLI:  He was lawfully admitted to the United
20   States --
21             THE COURT:  No, no, Mr. Carilli, there's a -- no, no
22   Mr. Carilli, there is a yes or no answer here.  We are not --
23   this is not Schrodinger's visa, either he's here legally or
24   he's not here legally.  If you cannot answer the question, you
25   have to explain to me why you cannot answer that question.

1     MR. CARILLI:  I cannot answer that question.  I have

2     talked to ICE as to whether or not they consider at this point

3     in time the individual, whether or not they are maintaining

4     lawful status.

5          THE COURT:  And what does ICE say to that?

6          MR. CARILLI:  I have not received a response, Your

7     Honor.

8          THE COURT:  Do you realize that this is Kafkaesque?

9     I've got two experienced immigration lawyers on behalf of a

10    client who is months away from graduation, who has done

11    nothing wrong, who has been terminated from a system that you

12    all keep telling me has no effect on his immigration status,

13    although that clearly is BS.  And now, his two very

14    experienced lawyers can't even tell him whether or not he's

15    here legally, because the Court can't tell him whether or not

16    he's here legally, because the government's counsel can't tell

17    him if he's here legally.

18         And you know what's going to happen when he gets

19    picked up?  He's going to be accused of being here illegally

20    in the United States because when he is picked up and put

21    through deportation proceedings, everyone's going to say he

22    was here illegally and he was obviously here illegally and he

23    should have known that.  And then some court down there is

24    going to say no, no, no, the Court up in D.C. asked and the

25    government said they didn't know.  And those lawyers, do you

1    know what they are going to do?  They're going to be like, I

2    don't know what that lawyer was thinking.

3                We are not going to do that here, Mr. Carilli.  That

4    is not happening in this courtroom.  We're going to get an

5    answer.  And if the answer somehow contradicts what is in your

6    brief, or what is in God willing no, Mr. Watson's declaration,

7    there are going to be serious consequences.  Where is your

8    agency counsel?

9                MR. CARILLI:  Will you allow me to confer with the

10   agency --

11               THE COURT:  No, you've been conferring with the

12   agency for -- I want the agency counsel on the phone, you sent

13   them the thing; right?

14               MR. CARILLI:  Your Honor, what I meant by confer was

15   please let me try and get them back on the phone to find out

16   why they have not joined the call.

17               THE COURT:  Fine.

18               MR. CARILLI:  That's what I meant by --

19               THE COURT:  Fine.

20               (Pause in the proceedings.)

21               MR. CARILLI:  Your Honor, agency counsel is joining

22   on the line.

23               THE COURT:  Plaintiff's counsel, is your client

24   allowed to go to classes right now?

25               MR. BROWN:  Your Honor, it is our client's position

1    that based off of ICE he cannot be in status and thus cannot

2    attend classes.

3            THE COURT:  Is anyone at the school preventing him

4    from going to classes?

5            MR. BROWN:  I don't think there's anybody physically

6    preventing him, no, Your Honor.

7            THE COURT:  All right.  Government counsel, I assume

8    while this is pending you are okay if he goes to classes?

9            MR. CARILLI:  I would need to confer with the Agency

10   about that, Your Honor.  I asked that specific question before

11   this hearing and did not receive a response.

12           THE COURT:  Is it they just don't respond to you or

13   they just don't give you an answer?

14           MR. CARILLI:  I have received that they don't have a

15   response to my question.  In other words, it's not a -- it is

16   not a they did not respond.  It's -- as the Agency counsel

17   just explained to me, when I asked him to join the link is he

18   indicated that those are operational decisions that are with

19   the client, with their client.

20           THE COURT:  Okay.  Well, then I want someone from

21   the client -- where is agency counsel?  How long does it take

22   to log on to a video?  We've been waiting for the agency

23   counsel now 20 minutes.

24           (Pause in the proceedings.)

25           MR. CARILLI:  Just communicated, Your Honor, that

1    he's trying to log in right now.

2         THE COURT:  Mr. Everly, could you please enter your

3    appearance.

4         THE CLERK:  Mr. Everly this is the courtroom deputy,

5    can you hear me, sir?  I can't hear you.

6         MR. EVERLY:  Can you hear me now?

7         THE COURT:  Mr. Everly, can you please enter your

8    appearance.

9         MR. EVERLY:  Yes.  MacKlin Keith Everly, agency

10   counsel for U.S. Immigration and Customs Enforcement.

11        THE COURT:  How long have you been agency counsel,

12   sir.

13        MR. EVERLY:  Little less than two years.

14        THE COURT:  Where were you before then?

15        MR. EVERLY:  I was with Progressive and

16   (indiscernible) company.

17        THE COURT:  All right.  Government counsel asked you

18   some questions today about Mr. Patel, sort of rather obvious

19   questions that I have asked government counsel.  He says he's

20   asked you and you said you can't -- you don't have an answer

21   for him because it was above your pay grade or with some

22   operational people.  So I'm going to ask the two questions and

23   there will be more.  And then we're going to get answers to

24   those questions, Mr. Everly, before we all get off the phone.

25   Am I understood?

1      MR. EVERLY:  I understand.  I understand, Your

2  Honor.  I will preface my responses with I won't have any

3  additional information --

4      THE COURT:  We're going to get additional

5  information, Mr. Everly, because you're going to tell me who

6  has that additional information and we're going to get that

7  person on the phone.  And if we have to, I'm going to get them

8  under oath.  All right?

9      MR. EVERLY:  Understood, Your Honor.

10      THE COURT:  The first question is, is Mr. Patel here

11  legally?  Is he lawfully in the United States?

12      MR. EVERLY:  Your Honor, since that's an operational

13  decision by my client, we're actively conferring with the

14  client, I don't have a response to provide at this time.  I

15  believe --

16      THE COURT:  Is Mr. Patel free to go to his classes

17  at Wisconsin?

18      MR. EVERLY:  I have to reiterate the same.  Same

19  response, Your Honor.

20      THE COURT:  Well, what's the effect of terminating

21  someone on SEVIS?  That's just a mechanical question, what's

22  the effect of terminating someone from SEVIS?

23      MR. EVERLY:  Again, Your Honor, that's an

24  operational --

25      THE COURT:  It's not an operational question,

1  Mr. Everly.  That is a mechanical question.  There is a policy

2  somewhere that says what the effect is, so tell me what the

3  effect is of terminating somebody from SEVIS.

4         MR. EVERLY:  Your Honor, I apologize, I do not have

5  the answer to the question.

6         THE COURT:  Okay.  Who has -- Mr. Everly, name me

7  the individual who has the answer to the first two questions

8  and then the third question.

9         MR. EVERLY:  Your Honor, all I can offer at this

10 point is that we have provided a declarant in this case --

11        THE COURT:  Yes, fine.  All right.  That's fine.

12 We're going to get Watson, Mr. Watson here under oath since

13 he's filed a declaration.  And if he doesn't give me the

14 answers that I need then we're going to get somebody else.

15 Because Mr. Watson's declaration doesn't tell me if Mr. Patel

16 is here legally.  It doesn't tell me if Mr. Patel can go to

17 classes.  And it doesn't tell me what the practical effect is

18 of terminating someone from SEVIS, but if we want to start

19 with Mr. Watson under oath subject to penalty of perjury, I'm

20 very happy to do that.  Is there anybody else other than Mr.

21 Watson, who can give me answers to those questions?  Let me

22 put it to you this way, who have you been communicating with

23 at the agency?

24        MR. EVERLY:  I've been communicating with other

25 agency counsel.

1          THE COURT:  Who?  Names, names, Mr. Everly, who?

2          I am ordering you to tell me who have you been

3   communicating with.  Now if you want to violate a court order

4   by stalling --

5          MR. EVERLY:  Your Honor, I have no desire --

6          THE COURT:  Okay.  Great.  Then tell me the name of

7   the person that you've been communicating with.

8          MR. EVERLY:  I have been communicating with -- and I

9   will provide names, I'm just prefacing, I've been

10  communicating with individuals from our National Security Law

11  Division, primarily deputy chief Nina Gleiberman and the chief

12  of the division also Kate Briscoe.  And also in communication

13  with my management deputy chief -- excuse me, deputy chief

14  Christa Leash and Chief Henry (indiscernible.)

15         THE COURT:  Okay.  Of those four people who is most

16  likely to have an answer to my questions.

17         MR. EVERLY:  Unfortunately, they are all in the same

18  position as I am.

19         THE COURT:  Who are they communicating with?

20         MR. EVERLY:  They're communicating with the

21  client --

22         THE COURT:  Who is the client?  Who at the client is

23  the person who's making these decisions or can give me an

24  answer?

25         MR. EVERLY:  We've been working with the

1    declarant --

2          THE COURT:  All right.  Fine.  Fine.  Get Mr. Watson

3    on the phone right now.  I'm ordering him to appear to this

4    hearing.  And he's going to be put under oath.

5          MR. EVERLY:  Understood, Your Honor.  I will take

6    those steps, if I can go on hold for a moment while I go do

7    that.

8          THE COURT:  Yup.

9          MR. EVERLY:  Thank you.

10          (Pause in the proceedings.)

11          THE COURT:  I'm going to take a ten minute recess

12   I'm going to be back here at 12:45.  Mr. Carilli, Mr. Watson

13   had better be on this phone when we get back, are we

14   understood?

15          MR. CARILLI:  Yes, Your Honor.

16          THE COURT:  All right.

17          (A recess was taken from 12:35 p.m. to 12:45 p.m.)

18          THE COURT:  All right.  Do we have Mr. Watson?

19          MR. EVERLY:  Your Honor, we're in active contact

20   with him and we're working to get him here as soon as we can.

21   If we could just have 10 or 15 more minutes to accomplish

22   that, I would really appreciate that.

23          THE COURT:  All right.  I'm going to give you until

24   1:15.

25          MR. EVERLY:  Thank you, Your Honor.

1          THE COURT:  Have him here by then, all right?

2          MR. EVERLY:  Yes, Your Honor.

3          THE COURT:  If something happens and you can't get

4    him here by 1:15, alert my law clerk we'll all get back on

5    with the video.  We'll figure out where to go from there, but

6    it's not going to be pretty.  Okay?

7          MR. EVERLY:  Yes, Your Honor.  Thank you.

8          THE COURT:  Thank you.

9          (A recess was taken from 12:47 p.m. to 1:15 p.m.)

10         THE COURT:  All right.  Mr. Watson, welcome.  You're

11   on mute, sir.

12         MR. WATSON:  My apologies.  Good afternoon, Your

13   Honor.

14         THE COURT:  No worries.  All right.  So you filed a

15   declaration on behalf of the government in this case.  And I

16   have some questions for you about that declaration.  I'm not

17   going to put you under oath at this time, but if I feel like

18   I'm getting the run around, which I hope I will not, I will

19   put you under oath.  Okay?

20         MR. WATSON:  Yes, ma'am.

21         THE COURT:  All right.  So first of all, can you

22   explain to me what the practical effect is of terminating

23   someone on SEVIS?  How do I say that by the way, SEVIS, SEVIS?

24         MR. WATSON:  SEVIS is appropriate.

25         THE COURT:  Okay.  So what happens, what's the

1    effect of terminating someone on SEVIS?

2        MR. WATSON:  So it does not terminate their

3    nonimmigrant status, but what it does is it essentially raises

4    a flag as it relates to the student and their participation in

5    the student and exchange visitor program.

6        THE COURT:  Okay.  And so what happens if that flag

7    is raised, what's the effect of the flag raised?  First of

8    all, who does it raise a flag to, ICE?

9        MR. WATSON:  Well, it raises a flag to a designated

10   school official.

11       THE COURT:  Okay.

12       MR. WATSON:  Because they have access to the student

13   and exchange visitor information system.  So a designated

14   school official works with ICE in managing the student and

15   exchange visitor program to ensure compliance with applicable

16   code of federal regulations as it relates to nonimmigrant

17   students studying in the United States.  So it alerts the DSO,

18   the designated school official or the PSO as to that matter.

19       THE COURT:  Okay.  And so that flag tells the

20   official what?  What does the official take from that flag?

21   I'm the school official, I have a flag on Mr. Patel, what do I

22   do now?

23       MR. WATSON:  So it raises a -- it raises a gap, if

24   you will, a question about the student, and compliance as it

25   relates to the terms of their -- as it relates to the terms of

1    their participation in the program.

2          THE COURT:  Okay.  And how does that question get

3    answered?  What question is asked, if they're in compliance?

4          MR. WATSON:  Well, the question can be what

5    happened, what occurred.  So there can be a notation in the

6    record saying what happened, or that someone may or may not be

7    in compliance.

8          THE COURT:  Okay.  So I'm -- so I'm the school

9    official, and I have Mr. Patel's transcripts and he's attended

10   all his classes.  And so far as I, the school official, know

11   he's done everything he's supposed to do.  I see that -- I

12   mean, I don't know if I see this from SEVIS, but I see from

13   somewhere that he got arrested -- or he got pulled over for

14   driving too fast in Texas, but that the charges were

15   dismissed.  And so now am I satisfied that he's in compliance,

16   is everything kosher?  If the answer to that is yes, what do I

17   do next?

18         MR. WATSON:  So great question.  And here's another

19   novelty as well too, designated school officials can also

20   reach out to field representatives.

21         THE COURT:  Field representatives for -- I'm sorry,

22   field representatives for ICE?

23         MR. WATSON:  Yes, ma'am.

24         THE COURT:  Okay.

25         THE WITNESS:  And there's a hand -- there's a

1  working relationship there as to compliance and oversight with

2  the program.  So questions can be raised in that dialogue and

3  discussion.  So like in this instance with the case being

4  dismissed, the question would be then what would the next

5  steps be in terms of in this case the defendant.  So with

6  those charges being dismissed the question then becomes is

7  there a matter there that requires further review.

8            THE COURT:  Okay.

9            MR. WATSON:  As it relates to immigration.

10           THE COURT:  All right.  So let's say you're the

11  field representative for Wisconsin, and I'm -- you're the

12  field representative that there was cause for school officials

13  to contact, you and I have a good working relationship.  I'm

14  the school official in Wisconsin.  I get a notice, a flag that

15  Mr. Patel has been terminated on SEVIS.  I call you and I say

16  what's this flag about?  I've looked at his transcript I've

17  talked to his professors, he's in compliance with all our

18  obligations.  Either I know or you tell me that he had been

19  arrested or pulled over for reckless -- for driving too fast

20  in Texas, but the charges were dismissed.  And so then you --

21  so I say, okay, so now you field representative say what to

22  me?

23           MR. WATSON:  The field representative in that

24  instance can say, well, based on this matter, as it relates to

25  the arrest, the question then becomes is there shall I say a

1    continuing requirement or a situation where this can or should

2    be revisited.  So what's interesting to note --

3                THE COURT:  I'm sorry, if what can be revisited?

4    His termination on SEVIS or his --

5                MR. WATSON:  That's correct.

6                THE COURT:  Okay.  All right.

7                MR. WATSON:  Yes, that's correct.  His termination

8    in SEVIS.  So the question then becomes by what means would

9    this person seek to do so, because what's interesting to note

10   about SEVIS is that there's also an ability for, if I'm

11   correct, CIS, Citizenship and Immigration Services to also do

12   the same as well too.

13               So this is a novelty, I'd like to note, in this

14   instance, where it was turned off pursuant to, I think what's

15   in the declaration, collaboration with State as to criminality

16   of nonimmigrant student studying in the United States.  So

17   pursuant to --

18               THE COURT:  Well, to be clear -- to be clear,

19   though, Mr. Watson, he's not a criminal.  He hasn't been

20   charged of anything, much less found guilty of anything, but I

21   understand your point.

22               But so let -- so let me ask you this, right now as

23   of this moment, is Mr. Patel legally in the United States?

24               MR. WATSON:  In terms of his status, this action in

25   itself, it doesn't terminate his nonimmigrant status at this

1    point.  It doesn't.

2           THE COURT:  So he's legally in the U.S.  So the

3    answer to my question is yes, he's legally in the United

4    States, as of this moment?

5           MR. WATSON:  I can't say that he's legally in the

6    United States.

7           THE COURT:  Who can tell me if he's legally in the

8    United States?

9           MR. WATSON:  So I would say right now the Department

10   of State by way of a nonimmigrant visa being issued would be

11   the starting point.  Now, if the visa has been revoked or it

12   has expired, then the question becomes whether or not duration

13   of status would apply.

14          THE COURT:  Okay.  But let me -- well, I'm happy to

15   get someone from State on the phone with us, but before I do

16   that, I have your declaration -- I imagine you filed a lot of

17   these declarations recently, right, because apparently somehow

18   all this has happened, like a lot of dozens of people have

19   been terminated from SEVIS, this isn't the only declaration

20   you've filed; right?

21          MR. WATSON:  Yes, ma'am.

22          THE COURT:  Okay.  All right.  Well, for this one in

23   particular, I don't know if you have it in front of you, but

24   in paragraph 8, and this is for Akshar Patel, if I go to

25   paragraph 8 it says, on April 2nd, 2025, CTLD received

1    communications from the Department of State indicating that

2    Patel did not have a valid visa and requesting that the SEVIS

3    record be terminated.  Was that -- I didn't -- are plaintiff's

4    counsel aware that his -- that State apparently terminated his

5    visa?

6         MR. BROWN:  Your Honor, I don't believe his visa is

7    the issue we're challenging, because he had a B visa and then

8    changed his status to F-1.  So he is not on that B visa.  I

9    can double -- I'm going to double check right now.

10         THE COURT:  But he's on a valid F-1 visa.

11         MR. BROWN:  He has valid F-1 status until this

12    happened, Your Honor.

13         MR. CARILLI:  Your Honor, if I may?

14         THE COURT:  Yeah, sure, please.

15         MR. CARILLI:  Yes, Your Honor.  Plaintiff initially,

16    as I understand from the Department of State, plaintiff

17    initially was issued an H-4 visa based on his -- based on his

18    mother coming in on an H -- I believe an H-1B.

19         THE COURT:  Okay.

20         MR. CARILLI:  And he was admitted into the country

21    on that H-4 visa in an H-4 status.  He then sought an I

22    believe adjusted status to that of an F status, and then is in

23    the country on an F status.

24         THE COURT:  Okay.  So then Mr. -- I'm sorry, sir.

25         MR. CARILLI:  And the H-4 visa validity period has

1   expired, which routinely happens for -- depending on how

2   individuals come into the country with a nonimmigrant

3   category, their visa validity period will be different than

4   the stamp that is provided on their I-94, which is their entry

5   document, which the periods may be different or in a lot of

6   cases individuals will be admitted into the United States in a

7   duration of status.

8          So, for example, Your Honor, if you've seen H-1B

9   case where is an individual says they've been in the United

10  States, they've been working but they had to leave for a

11  family issue or they have to leave and depart the United

12  States to get a new visa so that they can come and go from the

13  United States on that H-1B, that's why there's a different

14  between those two things.  And again the visa is just an

15  admission document, but also I would note that visa

16  revocations can form some basis for deportability under 327.

17          THE COURT:  Okay.  Thank you, sir.

18          So this April 2nd, 2025, communication that you

19  received from the State Department, Mr. Watson, do you have it

20  available to you?  I mean, was that a mistake by the State

21  Department that he was on an H-1 visa and he shouldn't be

22  terminated, but State just didn't pick up he was here validly

23  as a student.  I'm trying to figure out why State communicated

24  with you to have this record terminated?

25          MR. WATSON:  So, Your Honor, I don't have that

1  record in front of me.  And we are actually rescrubbing these

2  lists, because to the point that the gentleman that just spoke

3  pointed out, there are some of those nuances that have come

4  about.  So I don't have the information in front of me.  And I

5  believe State is re-examining various cases in a quality

6  control measure as well.

7          THE COURT:  Okay.  So let me put it to you this way.

8  So far as I can understand this kid has done everything that

9  he's supposed to have done.  And it seems like there's been

10 some miscommunication or something has happened.  And I'm

11 happy for State to do quality control.  I'm happy for you to

12 follow up on this and other individuals.  But what I want

13 coming out of this hearing is to at least either order

14 either -- I want this student to be able to go to class and

15 not get picked up by ICE.

16          Now, we can do that by, Mr. Watson, you agreeing to

17 that, or someone agreeing to that, and the plaintiffs going

18 and talking to Wisconsin people and saying he can go to

19 classes.  And if the Wisconsin person wants to talk to the

20 field representative, that's fine.  And if I need to put this

21 in an order, I will.  And I want him not to be picked up by

22 ICE.

23          Now, we can do this one of two ways.  One, we can

24 all agree that this is what's going to happen and Mr. Patel,

25 his lawyers can tell him legitimately that he can go to class,

1    or I can enter a temporary restraining order saying that he

2    can go to class and that he can't be deported.  And since

3    everything I've heard from you all is that that seems not

4    inconsistent with what you all know as of this moment, not

5    something that you all would challenge.

6            So Mr. Carilli, how should we proceed here?

7            MR. CARILLI:  Your Honor, I would comment that under

8    8 U.S.C. 1252(g), which addresses the jurisdiction of courts

9    to be able to over the decision by the Department of Homeland

10   Security to initiate removal proceedings and stripped that

11   jurisdiction from district courts.  And so for any matters

12   arising from a decision as to whether or not to place an

13   individual in removal proceedings, the Congress has said that

14   there's no jurisdiction for district courts in those

15   decisions.

16           THE COURT:  All right.  Well, let's take the classes

17   first.  We can all agree that I can order him to be allowed to

18   go to class as a TRO for now; right?  Mr. Carilli?

19           MR. CARILLI:  Your Honor, if you just give me a

20   moment to look through the relief that has been sought in the

21   TRO, I just need -- I need a moment to ensure that I -- and I

22   also, I mean, that's a -- you're asking me for potentially

23   something that is beyond the scope of my authority.

24           THE COURT:  Okay.  Here's what we're going to do,

25   Mr. Carilli, because I understand you guys are in a tough

1    spot, because you have a bunch of these cases and you don't

2    want a bunch of bad case law.  I get it.  One way or the other

3    this kid is going back to school today if he has classes,

4    tomorrow if he has classes tomorrow.  And if ICE touches this

5    guy there's going to be repercussions.

6              So now we can do this with you all agreeing that

7    amongst yourselves, and if anything happens you all bring it

8    to my attention, or we can do it through a subsequent hearing

9    this afternoon where I enter a TRO order.  I would rather the

10   former.  And I assume you guys are fine with both of those, at

11   least agreeing with plaintiffs to those because -- or just

12   some agreement that if ICE is going to pick up the guy that,

13   you know, they have 24 hours notice so that they can seek

14   emergency relief, I mean, we can just do that, right.  He can

15   go to class.  And if ICE is going to do anything with him,

16   which I don't suspect they are going to, the plaintiffs get 24

17   hours notice.  All right.

18             You guys come to that agreement, make life easy for

19   everyone, or you can continue to deal with me, Mr. Carilli.

20   And I will not stop with you or Mr. Everly or Mr. Watson,

21   we're going to continue down the road.  All right?

22             MR. CARILLI:  Yes, Your Honor.

23             THE COURT:  All right.  So I'm going to set another

24   hearing for 4:30, but you guys tell me that we don't need it.

25             Mr. Watson, do you have any idea how long State is

1    going to take with this quality review?

2          MR. WATSON:  Ma'am, I can tell you that they are

3    proceeding in earnest to do so, with the level of effort

4    they've made great strides in progress in coordination with my

5    team.

6          THE COURT:  Okay.

7          MR. WATSON:  So ma'am, I can emphasize to you that

8    sooner than better is occurring, ma'am.

9          THE COURT:  Perfect.  All right.  So it seems like,

10   Mr. Carilli, since my hope -- my strong hope is that State is

11   going to realize that this guy was on an F-1 visa and should

12   not have been terminated from SEVIS, my strong hope is that

13   that happens, that this was all an unfortunate mix up, that I

14   don't have to enter a TRO.  So I'm hopeful Mr. Carilli that

15   you and plaintiffs can figure something out amongst

16   yourselves.  Knowing, of course, that if anything happens,

17   plaintiff's lawyers, you can always seek relief from me.

18          Plaintiff's lawyers, do not make Mr. Carilli's life

19   miserable here.  Let's just practically try to get this guy

20   back to class and at least settled in the U.S. until we have

21   final determination of something.  Okay?

22          So I'm setting a hearing for 4:30 tentatively.

23   Hopefully, you all will tell me that we don't need it.

24          Mr. Watson, I understand that you're incredibly

25   busy.  And the last thing that you ever want to hear is

1    lawyers saying I need you on the phone right now with the

2    Court.  So I appreciate you getting on the phone.  And I

3    appreciate you giving me this information.  Thank you,

4    everybody.

5              MR. WATSON:  Thank you, ma'am.

6              MR. BROWN:  Thank you, Your Honor.

7              (A recess was taken from 1:33 p.m. to 4:31 p.m.)

8              THE CLERK:  Your Honor, recalling civil action

9    25-1096, Akshar Patel versus Todd M. Lyons.

10             Will the parties please identify themselves for the

11   record, starting with plaintiff's counsel.

12             MR. BANIAS:  I apologize, Brad Banias.  And I

13   believe Steve Brown will be joining us for the plaintiffs.

14             THE COURT:  All right.  Mr. Carilli.

15             MR. CARILLI:  Good afternoon, Your Honor.  Joseph

16   Carilli on behalf of the government.  And I'm expecting agency

17   counsel to join.

18             THE COURT:  All right.  Where are we gentleman?

19             MR. CARILLI:  Your Honor, the plaintiffs counsel and

20   I discussed a possible resolution.  I spoke to the agency and

21   the agency is not willing to reach a resolution with

22   plaintiff's counsel.

23             THE COURT:  Why isn't the agency willing to reach a

24   resolution?

25             MR. CARILLI:  They said at this point in time they

1    are not willing to do so.

2         THE COURT:  Mr. Everly can you please explain to me

3    why your agency is not willing to reach a resolution in a case

4    where they can't even tell me if the plaintiff is legally in

5    the United States, and it appears that by all events someone

6    at State and ICE screwed up here, and apparently in a lot of

7    other cases?  That's to you, Mr. Everly.

8         MR. EVERLY:  I apologize, Your Honor, I just logged

9    in, I thought you were addressing --

10        THE COURT:  No, I'm addressing you.  I want to know

11   why the Agency is not willing to reach a resolution when it

12   appears by all accounts that there was a massive screw up at

13   State, not just in this case, but in a lot of other cases,

14   where individuals who are in this country legally, have been

15   going to school, have been doing everything that they're

16   supposed to be doing, are now getting notices that their SEVIS

17   has been terminated when it appears it shouldn't have been.

18   And they're now having to hire lawyers.  And they have hired

19   lawyers for which they're spending money and now those lawyers

20   are in federal court.

21        And this morning I asked the most straight-forward

22   question one could ask, which is what is the effect of someone

23   being terminated on SEVIS?  And even though the government had

24   represented that it has no effect on an individual's

25   immigration status, no one could tell me what the effect of

1    having been terminated in SEVIS even is until I got you on the

2    phone and then I got Mr. Watson on the phone.  And I still, to

3    this day, do not have an answer from the government as to

4    whether or not the individual is here legally or not legally.

5         We all had what I thought was a very fair, very

6    simple process moving forward.  ICE and the plaintiffs would

7    work out an agreement where the plaintiff could continue to go

8    to school.  And since no one is able to tell him that he's

9    here illegally, he would stay in the country.  Now, what is

10   the problem with that resolution from your agency's

11   perspective?

12        MR. EVERLY:  Your Honor, all I can offer at this

13   time is my leadership is not able to provide a response at

14   this time.

15        THE COURT:  Who at your leadership, because we're

16   going to get that person on the phone.

17        MR. CARILLI:  Your Honor, if I may?

18        THE COURT:  Mr. Carilli.

19        MR. CARILLI:  From the government's perspective, we

20   believe that the Court -- the government has stated its

21   position in its papers and that --

22        THE COURT:  Yeah, but your statement in your papers

23   is not supported by the evidence, in fact, it's contradicted

24   by the evidence.

25        MR. CARILLI:  Your Honor, I disagree --

1      THE COURT:  And you can't even tell me what the

2  government's position is.  Tell me right now, right here, Mr.

3  Carilli, is the plaintiff in the country legally or illegally?

4      MR. CARILLI:  The government, as the individual

5  witness appeared before the Court --

6      THE COURT:  Mr. Carilli -- Mr. Carilli, do not

7  lecture me.  Do not lecture me.  I'm well aware of what has

8  happened in this case.  Is the individual here legally or

9  illegally?

10      MR. CARILLI:  That is an operational decision --

11      THE COURT:  Mr. Carilli -- Mr. Carilli --

12      MR. CARILLI:  I can't answer that.

13      THE COURT:  You can't answer that because the

14  government doesn't know or a decision hasn't been made?

15      It is outrageous, it is outra- -- Mr. Carilli, no,

16  stop.  It is outrageous that we have an individual who is

17  being told that he has been terminated in SEVIS, which by all

18  accounts is because your witness said that the State

19  Department told him that he was not here on a valid visa, even

20  though he is here on a valid visa.  And now, the government is

21  not able to say if he's here legally or illegally.  That is

22  either willful -- it is either willful or incompetent, neither

23  of which are good.

24      MR. CARILLI:  Your Honor, I would first state that

25  what the declarant stated when I stated earlier about whether

1    the individual is here on a valid visa, as we stated the

2    validity period of his visa has expired.

3            THE COURT:  Of the H visa.  Of the H visa.  That was

4    the validity of the H visa.  And the problem was that

5    apparently State didn't pick up that he's been moved to an F-1

6    visa, or maybe State has picked up that he's been moved to an

7    F-1 visa, we don't know, because apparently State made a

8    number of mistakes and now it's trying to correct them.

9            What I find particularly outrageous, Mr. Carilli and

10   Mr. Everly, is that we are here with the government of the

11   United States not able to tell a federal court whether a

12   plaintiff is here legally or illegally.  Even though that

13   you've had this case since, when did you all file this,

14   Mr. Brown, Friday, Thursday, when did you all file this?

15           MR. BANIAS:  Last Wednesday, Your Honor.

16           THE COURT:  Last Wednesday.  We're at a week and the

17   United States Government can't tell me whether or not an

18   individual's in the country legally or illegally.  You can't

19   even tell me why he's been terminated from SEVIS.

20           Here's what we're doing, Mr. Carilli, I'm entering a

21   TRO.  I find that there is potential irreparable injury, one,

22   in whether or not he'll be able to go to school.  And two,

23   whether he might be picked up at any moment mistakenly by ICE,

24   put on a plane and sent somewhere to never be heard from

25   again.  And while that might seem like an exaggeration, we all

1    now know that's not an exaggeration and it's, in fact, quite

2    possible.

3              So I'm entering a TRO.  He's going to be put back on

4    SEVIS in active status today within the hour.  And that TRO is

5    going to be in effect until we have briefing on this issue,

6    which you all tell me what briefing schedule you want.

7              And in that briefing, Mr. Carilli, the government is

8    going to tell me why he was terminated from SEVIS, whether

9    that was appropriate or not, and whether he's in the country

10   here legally.  Because I find that it is very likely that

11   plaintiffs are going to be able to prove that this was done

12   arbitrarily and capriciously.  And, you know, why I find it's

13   likely that they're able to prove that, because you all can't

14   tell me otherwise.

15             So what briefing schedule do you all want and what

16   hearing time do you want?

17             MR. CARILLI:  Your Honor, I would defer to

18   plaintiffs, if they would like to supplement their motion

19   first before -- and then I can speak as to when the government

20   would like to file a response to that.

21             THE COURT:  Well, the government is filing some

22   response, because I want these questions answered.

23             Mr. Brown, what schedule do you guys want?  I don't

24   want the TRO holding out too long.

25             MR. BANIAS:  Your Honor, I apologize.  Mr. Brad

1    Banias for the plaintiffs.  We are happy to file by Friday or

2    Monday, Monday preferably, only because I have another hearing

3    tomorrow.  But Friday would be fine, Your Honor, we're happy

4    to move as quickly as we can.  And we'd like to amend our

5    briefing to address these issues head on.

6              THE COURT:  All right.  Please also address the

7    finality of the issues.  So that would be -- that would be

8    Friday the -- Monday the 21st?

9              THE CLERK:  Yes, Your Honor.

10             MR. BANIAS:  Yes, Your Honor.  That would be

11   great.

12             THE COURT:  Mr. Carilli, how much time would you

13   like to respond?

14             MR. CARILLI:  The government would like the time

15   that's permitted under the local rules, one week, so the

16   28th.

17             THE COURT:  All right.  And then we will have the

18   TRO hearing on the 29th.  Mr. Watson is going to be in my

19   courtroom.  We'll have the PI hearing on the 29th.  Mr.

20   Carilli, Mr. Everly, both of you are going to be in my

21   courtroom, as is Mr. Watson, as is any other declarant you

22   want.  And I want witness in this courtroom who can tell me

23   whether the plaintiff is here legally or illegally.  Are we

24   clear, Mr. Carilli?  That's going to be in my order.

25             MR. CARILLI:  Yes, Your Honor.

1          THE COURT:  All right.  Mr. Banias, Mr. Brown, I

2    suggest you all be here in person too.  If you can't -- if you

3    can't you can appear by video, but I suggest one of you be

4    here in person.

5          Plaintiffs lawyers, I don't know if I have the power

6    to award attorney's fees in this case, but if I do you better

7    bring that to my attention, because if I find that the

8    government has been screwing around on this, we're going to

9    get into it.  All right.  Obviously, if I can't award fees, I

10   can't, but -- and maybe the government will tell me that I've

11   been wrong all along and, in fact, this wasn't arbitrary and

12   capricious and there was actually a reason that all this

13   happened and just nobody knows today, you know, I'll be the

14   first to say the government was right.

15         But right now what I'm seeing is that the government

16   is doing things at a very fast pace without much regard to the

17   effect it actually has on human being's lives.  And the fact

18   that this student, who is months from graduation, is now

19   having to pay two lawyers if not more to find out whether or

20   not he's even in the country legally, which is frankly beyond

21   belief at this point.  But we will be here.

22         You guys, Mr. Banias, Mr. Carilli, I understand you

23   guys are coming up with TRO language, come up with agreement

24   for TRO language in this case that's similar.  I want him back

25   on SEVIS though.

1        Mr. Everly, how soon can that happen?

2        MR. CARILLI:  Your Honor, I will have to reach out

3 to those who can reinstate it, but it will be done as quickly

4 as possible.

5        THE COURT:  All right.  If it's not done, Mr.

6 Banias, Mr. Brown, we're going to get into contempt issue,

7 because that's an order of the court.  Are we clear?  Is

8 everyone clear on that?  Is there any lack of clarification on

9 what I have ordered with respect to him being put back on

10 active in SEVIS immediately.

11        MR. CARILLI:  Your Honor, no.

12        THE COURT:  All right.  Great.  You guys come up

13 with TRO language.  I know that you guys had until 10:00 a.m.

14 tomorrow for Judge Walton.  If you guys need until 10:00 a.m.

15 tomorrow that's fine.  I want him put back on SEVIS as quickly

16 as possible.  Are we all clear?

17        MR. CARILLI:  Yes, Your Honor.

18        MR. BANIAS:  Yes, Your Honor.

19        THE COURT:  Mr. Carilli, I know that this is not

20 your fault.  I know that you're just doing what you can.

21 Mr. Everly, I assume that you're doing what you can.  But I'm

22 not playing games.  I'm not going to be jerked around by

23 anyone in your leadership.  It's not going to happen.  Are we

24 clear on that?

25        MR. CARILLI:  Yes, Your Honor.

1              THE COURT:  Mr. Everly?

2              MR. EVERLY:  Yes, Your Honor.

3              THE COURT:  I would suggest that you let your

4      leadership at agency and Mr. Watson, who I found to be

5      forthright today at least, know that we're done playing games.

6      I want answers.  I want to get this settled.  If this was

7      arbitrary and capricious, I'm going to say that.  If there was

8      a reason why it happened then we'll get into that too, and

9      I'll obviously listen for it, right.  But I'm not going to get

10     here on 29th and have a response of I don't have an answer

11     from my client.  Are we understood?  Mr. Everly, are you

12     understood that we're not going to get here on the 29th with

13     anyone saying to me I don't have an answer from my client?

14             MR. EVERLY:  I understand, Your Honor.

15             THE COURT:  All right.  Thank you.

16             (The proceedings were concluded at 4:44 p.m.)

17

18             I, Christine Asif, RPR, FCRR, do hereby certify that
       the foregoing is a correct transcript from the stenographic
19     record of proceedings in the above-entitled matter.

20             _____/s/_____
                 Christine T. Asif
21               Official Court Reporter

22

23

24

25

< Dates >.
April 2nd,
  2025,  23:25,
  25:18.
.
.
< 0 >.
00 38:13,
  38:14.
06 7:1.
08 8:11.
.
.
< 1 >.
1 17:24, 18:4,
  18:9, 30:7.
10 7:1, 17:21,
  38:13,
  38:14.
10333 1:24.
1050 1:24.
10:45 a.m.
  1:13.
11 8:1.
12 7:1, 8:11,
  17:12, 17:17,
  18:9.
1229a 9:8.
1252(g 27:8.
1372 3:10,
  3:11.
15 17:21,
  17:24, 18:4,
  18:9.
19 8:11.
.
.
< 2 >.
20 12:23.
20001 1:36,
  1:44.
202 1:45.
2025 1:11.
21st 36:8.
24 28:13,
  28:16.
25-1096 2:2,
  30:9.
25-1096-ACR
  1:6.

25-minute
  8:2.
28th 36:16.
29403 1:30.
29th 36:18,
  36:19, 39:10,
  39:12.
.
.
< 3 >.
30 28:24,
  29:22.
31 30:7.
327 25:16.
33 30:7.
333 1:43.
35 17:17.
354-3247
  1:45.
.
.
< 4 >.
4 28:24, 29:22,
  30:7,
  39:16.
40 2:25, 8:1.
44 39:16.
45 17:12,
  17:17.
47 18:9.
.
.
< 5 >.
53 7:1.
.
.
< 6 >.
601 1:35.
602 1:29.
.
.
< 7 >.
77042 1:25.
.
.
< 8 >.
8 3:9, 23:24,
  23:25,
  27:8.
.

.
< 9 >.
9/11 3:12.
_____/s/___
_____
  39:22.
.
.
< A >.
A. 1:22.
a.m. 7:1,
  38:13,
  38:14.
ability
  22:10.
able 3:12,
  3:18, 9:7,
  9:11, 9:13,
  26:14, 27:9,
  32:8, 32:13,
  33:21, 34:11,
  34:22, 35:11,
  35:13.
above 13:21.
above-entitled
  39:20.
access 19:12.
accomplish
  17:21.
accounts 31:12,
  33:18.
accused
  10:19.
action 2:2,
  22:24,
  30:8.
active 4:3,
  4:5, 4:7,
  4:20, 5:2,
  5:8, 5:11,
  17:19, 35:4,
  38:10.
actively
  14:13.
actually 2:13,
  2:15, 26:1,
  37:12,
  37:17.
additional
  14:3, 14:4,

14:6.
address 36:5,
  36:6.
addresses
  27:8.
addressing
  31:9,
  31:10.
adjusted
  24:22.
admission 8:25,
  25:15.
admitted 9:1,
  9:19, 24:20,
  25:6.
afternoon
  18:12, 28:9,
  30:15.
Agency 7:5,
  7:22, 7:24,
  7:25, 8:2,
  8:3, 8:5,
  8:15, 11:8,
  11:10, 11:12,
  11:21, 12:9,
  12:16, 12:21,
  12:22, 13:9,
  13:11, 15:23,
  15:25, 30:16,
  30:20, 30:21,
  30:23, 31:3,
  31:11, 32:10,
  39:4.
agree 26:24,
  27:17.
agreeing 26:16,
  26:17, 28:6,
  28:11.
agreement
  28:12, 28:18,
  32:7,
  37:23.
Akshar 2:2,
  23:24,
  30:9.
AKSHAR PATEL
  1:5.
alert 18:4.
alerts 19:17.
allow 11:9.

allowed 11:24,
  27:17.
allows 4:3,
  8:24.
although
  10:13.
amend 36:4.
amongst 28:7,
  29:15.
Ana C. Reyes
  1:17.
Andre 1:39.
answer 5:13,
  5:15, 5:16,
  5:17, 6:2,
  6:12, 7:8,
  7:21, 8:2,
  9:11, 9:13,
  9:22, 9:24,
  9:25, 10:1,
  11:5, 12:13,
  13:20, 15:5,
  15:7, 16:16,
  16:24, 20:16,
  23:3, 32:3,
  33:12, 33:13,
  39:10,
  39:13.
answered 20:3,
  35:22.
answers 13:23,
  15:14, 15:21,
  39:6.
anybody 12:5,
  15:20.
apologies
  18:12.
apologize 15:4,
  30:12, 31:8,
  35:25.
apparently
  7:25, 23:17,
  24:4, 31:6,
  34:5, 34:7.
appear 17:3,
  37:3.
appearance
  13:3, 13:8.
APPEARANCES
  1:20.

appeared
  33:5.
appears 31:5,
  31:12,
  31:17.
applicable
  19:15.
apply 23:13.
appreciate
  17:22, 30:2,
  30:3.
appropriate
  18:24,
  35:9.
April 16
  1:11.
arbitrarily
  35:12.
arbitrary
  37:11,
  39:7.
argument 5:2,
  5:4.
arising
  27:12.
around 6:2,
  6:24, 18:18,
  37:8,
  38:22.
arrest 21:25.
arrested 20:13,
  21:19.
Asif 1:41,
  39:18,
  39:23.
assume 12:7,
  28:10,
  38:21.
attend 12:2.
attended
  20:9.
attention 28:8,
  37:7.
Attorney 1:33,
  37:6.
authority
  27:23.
automatically
  5:3.
available

25:20.
Avenue 1:24,
  1:29, 1:43.
award 37:6,
  37:9.
aware 24:4,
  33:7.
away 10:10.
.
.
< B >.
B. 1:27.
back 4:20,
  4:22, 5:8,
  6:14, 6:24,
  11:15, 17:12,
  17:13, 18:4,
  28:3, 29:20,
  35:3, 37:24,
  38:9,
  38:15.
bad 28:2.
Banias 1:27,
  1:28, 2:7,
  30:12, 34:15,
  36:1, 37:1,
  37:22,
  38:6.
based 12:1,
  21:24,
  24:17.
basis 25:16.
becomes 21:6,
  21:25, 22:8,
  23:12.
behalf 10:9,
  18:15,
  30:16.
belief 37:21.
believe 14:15,
  24:6, 24:18,
  24:22, 26:5,
  30:13,
  32:20.
bench 6:16.
better 3:3,
  17:13, 29:8,
  37:6.
beyond 27:23,
  37:20.

Brad 2:7,
  30:12,
  35:25.
Bradley 1:27.
brief 11:6.
briefing 35:5,
  35:6, 35:7,
  35:15,
  36:5.
bring 28:7,
  37:7.
Briscoe
  16:12.
Brown 1:22,
  1:23, 2:6,
  30:13, 34:14,
  35:23, 37:1,
  38:6.
BS 10:13.
bunch 28:1,
  28:2.
busy 29:25.
.
.
< C >.
C. 1:12, 1:23,
  1:44, 3:9,
  10:24,
  27:8.
call 5:25,
  6:10, 11:16,
  21:15.
canceling 5:4,
  5:24.
cancels 5:3.
capricious
  37:12,
  39:7.
capriciously
  35:12.
case 5:23, 6:3,
  6:24, 7:9,
  15:10, 18:15,
  21:3, 21:5,
  25:9, 28:2,
  31:3, 31:13,
  33:8, 34:13,
  37:6,
  37:24.
cases 25:6,

26:5, 28:1,
31:7,
31:13.
categories
4:3.
category
25:3.
cause 21:12.
certify
39:18.
challenge
27:5.
challenging
24:7.
change 4:10,
4:22, 5:2,
5:8.
changed 4:5,
4:9, 4:12,
24:8.
changing 5:11,
7:6.
charged
22:20.
charges 20:14,
21:6,
21:20.
Charleston
1:30.
check 24:9.
Chief 16:11,
16:13,
16:14.
Christa
16:14.
Christine 1:41,
39:18,
39:23.
CIS 22:11.
Citizenship
22:11.
Civil 1:5,
1:34, 2:2,
30:8.
clarification
38:8.
clarify 4:1.
class 26:14,
26:25, 27:2,
27:18, 28:15,

29:20.
classes 11:24,
12:2, 12:4,
12:8, 14:16,
15:17, 20:10,
26:19, 27:16,
28:3, 28:4.
clear 22:18,
36:24, 38:7,
38:8, 38:16,
38:24.
clearly
10:13.
CLERK 13:4,
18:4, 30:8.
client 6:11,
6:19, 10:10,
11:23, 11:25,
12:19, 12:21,
14:13, 14:14,
16:21, 16:22,
39:11,
39:13.
code 19:16.
collaboration
22:15.
COLUMBIA 1:2.
coming 24:18,
26:13,
37:23.
comment 27:7.
communicated
12:25,
25:23.
communicating
15:22, 15:24,
16:3, 16:7,
16:8, 16:10,
16:19,
16:20.
communication
16:12,
25:18.
communications
24:1.
company
13:16.
compliance
19:15, 19:24,
20:3, 20:7,

20:15, 21:1,
21:17.
components
2:12.
computer-aided
1:49.
concerned
4:25.
concluded
39:16.
confer 2:12,
2:13, 2:15,
2:22, 2:24,
11:9, 11:14,
12:9.
conferring
11:11,
14:13.
confirmed
2:21.
Congress
27:13.
consequence
4:6, 4:8,
5:10.
consequences
11:7.
consider
10:2.
Constitution
1:43.
contact 17:19,
21:13.
contempt
38:6.
continue 28:19,
28:21,
32:7.
continuing
22:1.
contradicted
32:23.
contradicts
11:5.
control 26:6,
26:11.
conversation
8:1.
conversations
7:23.

coordination
29:4.
correct 22:5,
22:7, 22:11,
34:8,
39:19.
counsel 2:8,
7:22, 7:24,
7:25, 8:2,
8:3, 8:5,
8:15, 10:16,
11:8, 11:12,
11:21, 11:23,
12:7, 12:16,
12:21, 12:23,
13:10, 13:11,
13:17, 13:19,
15:25, 24:4,
30:11, 30:17,
30:19,
30:22.
country 3:13,
24:20, 24:23,
25:2, 31:14,
32:9, 33:3,
34:18, 35:9,
37:20.
course 8:9,
29:16.
courtroom 8:5,
11:4, 13:4,
36:19, 36:21,
36:22.
courts 27:8,
27:11,
27:14.
criminal
22:19.
criminality
22:15.
CTLD 23:25.
Customs 3:15,
13:10.
.
.
< D >.
day 32:3.
DC 1:36.
deal 28:19.
decides 5:22.

decision 14:13,
    27:9, 27:12,
    33:10,
    33:14.
decisions
    12:18, 16:23,
    27:15.
declarant 8:4,
    15:10, 17:1,
    33:25,
    36:21.
declaration
    11:6, 15:13,
    15:15, 18:15,
    18:16, 22:15,
    23:16,
    23:19.
declarations
    23:17.
Defendant 1:12,
    1:32, 21:5.
defer 35:17.
delay 7:11,
    7:12, 7:13,
    7:15, 7:16.
deleted 4:4.
depart 25:11.
Department
    23:9, 24:1,
    24:16, 25:19,
    25:21, 27:9,
    33:19.
depending
    25:1.
deportability
    25:16.
deportation
    10:21.
deported
    27:2.
deputy 13:4,
    16:11,
    16:13.
described
    4:9.
designated
    19:9, 19:13,
    19:18,
    20:19.
desire 16:5.

determination
    29:21.
dialogue
    21:2.
different 8:23,
    25:3, 25:5,
    25:13.
disagree
    32:25.
discussed
    30:20.
discussion
    21:3.
dismissed
    20:15, 21:4,
    21:6,
    21:20.
District 1:1,
    1:2, 1:18,
    27:11,
    27:14.
Division 1:34,
    16:11,
    16:12.
document 25:5,
    25:15.
doing 31:15,
    31:16, 34:20,
    37:16, 38:20,
    38:21.
done 2:19,
    6:15, 6:16,
    10:10, 20:11,
    26:8, 26:9,
    35:11, 38:3,
    38:5, 39:5.
double 24:9.
down 4:2,
    10:23,
    28:21.
dozens 23:18.
driving 20:14,
    21:19.
drop 4:2.
DSO 19:17.
duration 23:12,
    25:7.
.
.
< E >.

earlier
    33:25.
earnest 29:3.
easy 28:18.
effect 8:21,
    10:12, 14:20,
    14:22, 15:2,
    15:3, 15:17,
    18:22, 19:1,
    19:7, 31:22,
    31:24, 31:25,
    35:5,
    37:17.
effects 7:5.
effort 29:3.
Either 2:19,
    5:3, 9:14,
    9:23, 21:18,
    26:13, 26:14,
    33:22.
email 2:14.
emergency
    28:14.
emphasize
    29:7.
Enforcement
    3:15,
    13:10.
enrolled
    3:19.
ensure 19:15,
    27:21.
enter 13:2,
    13:7, 27:1,
    28:9,
    29:14.
entering 34:20,
    35:3.
entry 25:4.
Esquire 1:22,
    1:27, 1:32.
essentially
    19:3.
established
    3:9, 3:11.
events 31:5.
Everly 1:38,
    13:2, 13:4,
    13:7, 13:9,
    13:24, 14:5,

15:1, 15:6,
    16:1, 28:20,
    31:2, 31:7,
    34:10, 36:20,
    38:1, 38:21,
    39:1,
    39:11.
everybody
    30:4.
everyone 10:21,
    28:19,
    38:8.
everything
    2:21, 20:11,
    20:16, 26:8,
    27:3,
    31:15.
evidence 32:23,
    32:24.
exactly 3:6,
    4:8.
exaggeration
    34:25,
    35:1.
example 25:8.
exchange 19:5,
    19:13,
    19:15.
excuse 3:11,
    8:7, 16:13.
expecting
    30:16.
experienced
    10:9,
    10:14.
expired 23:12,
    25:1, 34:2.
explain 3:6,
    5:10, 7:7,
    9:25, 18:22,
    31:2.
explained
    12:17.
.
.
< F >.
F-1 3:18, 3:21,
    5:3, 8:20,
    8:22, 9:6,
    9:7, 24:8,

24:10, 24:11,
  29:11, 34:5,
  34:7.
F. 1:32, 2:9,
  3:15.
fact 32:23,
  35:1, 37:11,
  37:17.
fair 32:5.
family 25:11.
far 20:10,
  26:8.
fast 20:14,
  21:19,
  37:16.
fault 38:20.
FCRR 1:41,
  39:18.
Federal 1:42,
  19:16, 31:20,
  34:11.
feel 18:17.
fees 37:6,
  37:9.
Field 20:20,
  20:21, 20:22,
  21:11, 21:12,
  21:21, 21:23,
  26:20.
figure 18:5,
  25:23,
  29:15.
file 34:13,
  34:14, 35:20,
  36:1.
filed 15:13,
  18:14, 23:16,
  23:20.
filing 35:21.
final 29:21.
finality
  36:7.
find 6:1,
  11:15, 34:9,
  34:21, 35:10,
  35:12, 37:7,
  37:19.
Fine 6:7, 6:8,
  11:17, 11:19,
  15:11, 17:2,

26:20, 28:10,
  36:3,
  38:15.
First 2:18,
  5:5, 5:23,
  14:10, 15:7,
  18:21, 19:7,
  27:17, 33:24,
  35:19,
  37:14.
flag 19:4,
  19:6, 19:7,
  19:8, 19:9,
  19:19, 19:20,
  19:21, 21:14,
  21:16.
follow 26:12.
foregoing
  39:19.
form 25:16.
former 28:10.
forthright
  39:5.
forward 32:6.
forwarded 8:14,
  8:18.
found 22:20,
  39:4.
four 16:15.
frankly
  37:20.
free 14:16.
Friday 34:14,
  36:1, 36:3,
  36:8.
front 23:23,
  26:1, 26:4.
future 2:11.
.
.
< G >.
games 38:22,
  39:5.
gap 19:23.
genre 8:23.
Gentleman 2:11,
  6:14, 6:23,
  26:2,
  30:18.
gets 7:10,

10:18.
getting 18:18,
  30:2,
  31:16.
give 12:13,
  15:13, 15:21,
  16:23, 17:23,
  27:19.
giving 30:3.
Gleiberman
  16:11.
God 11:6.
Government 2:8,
  2:10, 4:21,
  5:5, 8:20,
  9:5, 9:15,
  10:16, 10:25,
  12:7, 13:17,
  13:19, 18:15,
  30:16, 31:23,
  32:3, 32:19,
  32:20, 33:2,
  33:4, 33:14,
  33:20, 34:10,
  34:17, 35:7,
  35:19, 35:21,
  36:14, 37:8,
  37:10, 37:14,
  37:15.
grade 13:21.
graduation
  10:10,
  37:18.
Great 16:6,
  20:18, 29:4,
  36:11,
  38:12.
guilty 22:20.
guy 28:5,
  28:12, 29:11,
  29:19.
guys 3:1, 6:14,
  6:23, 27:25,
  28:10, 28:18,
  28:24, 35:23,
  37:22, 37:23,
  38:12, 38:13,
  38:14.
.
.

< H >.
H-1 25:21.
H-1B 24:18,
  25:8,
  25:13.
H-4 24:17,
  24:21,
  24:25.
hand 20:25.
hang 6:14.
happen 10:18,
  26:24, 38:1,
  38:23.
happened 20:5,
  20:6, 23:18,
  24:12, 26:10,
  33:8, 37:13,
  39:8.
happening
  11:4.
happens 4:13,
  7:10, 7:17,
  18:3, 18:25,
  19:6, 25:1,
  28:7, 29:13,
  29:16.
happy 15:20,
  23:14, 26:11,
  36:1, 36:3.
he'll 34:22.
head 36:5.
hear 6:15,
  13:5, 13:6,
  29:25.
heard 27:3,
  34:24.
hearing 12:11,
  17:4, 26:13,
  28:8, 28:24,
  29:22, 35:16,
  36:2, 36:18,
  36:19.
Henry 16:14.
hereby 39:18.
hire 31:18.
hired 31:18.
hold 17:6.
holding
  35:24.
home 4:20,

5:9.
Homeland 3:12,
    27:9.
Honorable
    1:17.
hope 18:18,
    29:10,
    29:12.
hopeful
    29:14.
Hopefully
    29:23.
hour 7:8,
    35:4.
hours 28:13,
    28:17.
Houston 1:25.
human 37:17.
.
.
< I >.
I-94 25:4.
ICE 4:22, 4:25,
    9:6, 9:7,
    10:2, 10:5,
    12:1, 19:8,
    19:14, 20:22,
    26:15, 26:22,
    28:4, 28:12,
    28:15, 31:6,
    32:6,
    34:23.
idea 28:25.
identify 2:4,
    30:10.
illegally
    10:19, 10:22,
    32:9, 33:3,
    33:9, 33:21,
    34:12, 34:18,
    36:23.
imagine
    23:16.
immediately
    2:19,
    38:10.
Immigration
    3:15, 4:10,
    5:6, 5:7,
    10:9, 10:12,

13:10, 21:9,
    22:11,
    31:25.
impact 3:23,
    4:12, 4:18,
    4:19, 5:13,
    6:4.
import 5:24.
inactive
    5:11.
incompetent
    33:22.
inconsistent
    27:4.
incredibly
    29:24.
indicated 4:22,
    8:15,
    12:18.
indicating
    24:1.
indication
    4:14.
indiscernible
    13:16.
indiscernible.
    16:14.
individual
    3:17, 4:4,
    4:9, 4:10,
    4:15, 8:16,
    8:24, 8:25,
    10:3, 15:7,
    25:9, 27:13,
    31:24, 32:4,
    33:4, 33:8,
    33:16, 34:1,
    34:18.
individuals
    3:13, 16:10,
    25:2, 25:6,
    26:12,
    31:14.
information
    3:8, 3:18,
    14:3, 14:5,
    14:6, 19:13,
    26:4, 30:3.
initially
    24:15,

24:17.
initiate
    27:10.
injury 34:21.
inside 4:9.
instance 21:3,
    21:24,
    22:14.
interesting
    22:2, 22:9.
invite 8:15.
irreparable
    34:21.
issue 3:14,
    24:7, 25:11,
    35:5, 38:6.
issued 23:10,
    24:17.
issues 36:5,
    36:7.
itself 22:25.
.
.
< J >.
jerked 6:1,
    38:22.
join 8:17,
    12:17,
    30:17.
joined 11:16.
joining 11:21,
    30:13.
joint 2:18.
Joseph 1:32,
    2:9, 30:15.
Jr 1:32.
Judge 1:18,
    38:14.
jurisdiction
    27:8, 27:11,
    27:14.
.
.
< K >.
Kafkaesque
    10:8.
Kate 16:12.
keep 10:12.
Keith 13:9.
key 6:2.

kid 26:8,
    28:3.
Knowing
    29:16.
known 10:23.
knows 37:13.
kosher 20:16.
.
.
< L >.
lack 38:8.
language 37:23,
    37:24,
    38:13.
Last 2:24,
    29:25, 34:15,
    34:16.
later 8:1.
Law 1:28,
    16:10, 18:4,
    28:2.
lawful 9:1,
    10:4.
lawfully 9:3,
    9:9, 9:19,
    14:11.
lawyer 9:15,
    11:2.
lawyers 10:9,
    10:14, 10:25,
    26:25, 29:17,
    29:18, 30:1,
    31:18, 31:19,
    37:5,
    37:19.
leadership
    32:13, 32:15,
    38:23,
    39:4.
Leash 16:14.
least 26:13,
    28:11, 29:20,
    39:5.
leave 25:10,
    25:11.
lecture 33:7.
legally 9:14,
    9:15, 9:16,
    9:17, 9:18,
    9:23, 9:24,

10:15, 10:16,
10:17, 14:11,
15:16, 22:23,
23:2, 23:3,
23:5, 23:7,
31:4, 31:14,
32:4, 33:3,
33:8, 33:21,
34:12, 34:18,
35:10, 36:23,
37:20.
legitimately
26:25.
less 13:13,
22:20.
level 29:3.
life 28:18,
29:18.
likely 16:16,
35:10,
35:13.
line 11:22.
link 12:17.
list 4:3.
listen 2:17,
39:9.
lists 26:2.
litigation
5:18.
Little 13:13.
lives 37:17.
LLC 1:28.
local 36:15.
log 12:22,
13:1.
logged 31:8.
long 2:24,
12:21, 13:11,
28:25,
35:24.
longer 8:22.
look 2:16,
27:20.
looked 21:16.
lose 7:18.
lot 23:16,
23:18, 25:5,
31:6,
31:13.
Lyons 2:3,

30:9.
.
.
< M >.
M. 2:3, 30:9.
Ma'am 18:20,
20:23, 23:21,
29:2, 29:7,
29:8, 30:5.
machine 1:48.
Macklin 1:38,
13:9.
maintaining
10:3.
maintains
3:16.
management
16:13.
managing
19:14.
massive
31:12.
matter 19:18,
21:7, 21:24,
39:20.
matters
27:11.
mean 4:14,
7:11, 9:14,
9:16, 20:12,
25:20, 27:22,
28:14.
means 22:8.
meant 11:14,
11:18.
measure 26:6.
mechanical
14:21,
15:1.
meet 2:12,
2:13, 2:14,
2:21, 2:24.
menu 4:2.
minute 17:11.
minutes 2:25,
12:23,
17:21.
miscommunicatio
n 26:10.
miserable

29:19.
mistake
25:20.
mistakenly
34:23.
mistakes
34:8.
mix 29:13.
moment 17:6,
22:23, 23:4,
27:4, 27:20,
27:21,
34:23.
Monday 36:2,
36:8.
money 31:19.
monitor 3:13,
3:17, 3:21,
3:24.
months 10:10,
37:18.
morning 2:6,
2:22,
31:21.
mother 24:18.
motion 35:18.
Motions Hearing
1:16.
move 36:4.
moved 34:5,
34:6.
moving 4:7,
4:19, 32:6.
MR. BANIAS
30:12, 35:25,
36:10,
38:18.
MR. BROWN 2:6,
2:23, 2:25,
3:2, 11:25,
12:5, 24:6,
24:11,
30:6.
MR. EVERLY
13:6, 13:9,
13:13, 13:15,
14:1, 14:9,
14:12, 14:18,
14:23, 15:4,
15:9, 15:24,

16:5, 16:8,
16:17, 16:20,
16:25, 17:5,
17:9, 17:19,
17:25, 18:2,
18:7, 31:8,
32:12, 39:2,
39:14.
MR. WATSON
18:12, 18:20,
18:24, 19:2,
19:9, 19:12,
19:23, 20:4,
20:18, 20:23,
21:9, 21:23,
22:5, 22:7,
22:24, 23:5,
23:9, 23:21,
25:25, 29:2,
29:7, 30:5.
Ms 6:25.
mute 6:10,
6:21, 6:25,
18:11.
.
.
< N >.
name 8:17,
15:6, 16:6.
Names 16:1,
16:9.
National
16:10.
need 12:9,
15:14, 26:20,
27:21, 28:24,
29:23, 30:1,
38:14.
neither
33:22.
Neumann 1:23.
new 25:12.
next 6:17,
20:17,
21:4.
Nina 16:11.
NO. 1:5.
nobody 37:13.
none 2:19.
nonimmigrant

19:3, 19:16,
22:16, 22:25,
23:10,
25:2.
notation
20:5.
note 22:2,
22:9, 22:13,
25:15.
nothing 5:6,
5:7, 10:11.
notice 21:14,
28:13,
28:17.
notices
31:16.
novelty 20:19,
22:13.
nuances 26:3.
number 34:8.
NW 1:35,
1:43.
.
.
< O >.
oath 14:8,
15:12, 15:19,
17:4, 18:17,
18:19.
obligations
21:18.
obvious 7:9,
13:18.
Obviously 3:14,
5:23, 10:22,
37:9, 39:9.
occurred 4:2,
20:5.
occurring
29:8.
occurs 4:13.
offer 15:9,
32:12.
Office 1:33.
Official 1:42,
19:10, 19:14,
19:18, 19:20,
19:21, 20:9,
20:10, 21:14,
39:24.

officials
20:19,
21:12.
Okay 3:1, 3:20,
3:23, 4:6,
5:22, 8:19,
9:3, 12:8,
12:20, 15:6,
16:6, 16:15,
18:6, 18:19,
18:25, 19:6,
19:11, 19:19,
20:2, 20:8,
20:24, 21:8,
21:21, 22:6,
23:14, 23:22,
24:19, 24:24,
25:17, 26:7,
27:24, 29:6,
29:21.
One 2:13, 5:22,
8:15, 23:22,
26:23, 28:2,
31:22, 31:25,
32:8, 34:21,
36:15,
37:3.
operational
12:18, 13:22,
14:12, 14:24,
14:25,
33:10.
order 16:3,
26:13, 26:21,
27:1, 27:17,
28:9, 36:24,
38:7.
ordered 38:9.
ordering 6:19,
16:2, 17:3.
orders 2:12.
otherwise
35:14.
outra- 33:15.
outrageous
33:15, 33:16,
34:9.
oversight
21:1.
.

.
< P >.
p.m. 7:2, 8:11,
8:12, 17:17,
18:9, 30:7,
39:16.
pace 37:16.
papers 32:21,
32:22.
paragraph
23:24,
23:25.
part 3:21.
participation
19:4, 20:1.
particular
23:23.
particularly
34:9.
parties 2:4,
30:10.
Patel 2:3,
8:20, 8:22,
9:16, 13:18,
14:10, 14:16,
15:15, 15:16,
19:21, 20:9,
21:15, 22:23,
23:24, 24:2,
26:24,
30:9.
Pause 7:1,
8:11, 11:20,
12:24,
17:10.
pay 13:21,
37:19.
penalty
15:19.
pending 12:8.
people 3:21,
13:22, 16:15,
23:18,
26:18.
Perfect 29:9.
period 24:25,
25:3, 34:2.
periods 25:5.
perjury
15:19.

permitted
36:15.
person 6:17,
8:18, 14:7,
16:7, 16:23,
22:9, 26:19,
32:16, 37:2,
37:4.
perspective
32:11,
32:19.
phone 6:9,
6:17, 6:18,
6:19, 6:20,
7:25, 8:2,
8:3, 8:6,
11:12, 11:15,
13:24, 14:7,
17:3, 17:13,
23:15, 30:1,
30:2, 32:2,
32:16.
physically
12:5.
PI 36:19.
pick 25:22,
28:12,
34:5.
picked 10:19,
10:20, 26:15,
26:21, 34:6,
34:23.
place 27:12.
Plaintiff 1:7,
1:22, 5:1,
11:23, 24:3,
24:15, 24:16,
29:17, 29:18,
30:11, 30:22,
31:4, 32:7,
33:3, 34:12,
36:23.
Plaintiffs 2:7,
26:17, 28:11,
28:16, 29:15,
30:13, 30:19,
32:6, 35:11,
35:18, 36:1,
37:5.
plane 34:24.

playing 38:22, 39:5.
Please 2:4, 2:16, 5:10, 6:25, 7:7, 8:6, 11:15, 13:2, 13:7, 24:14, 30:10, 31:2, 36:6.
point 10:2, 15:10, 22:21, 23:1, 23:11, 26:2, 30:25, 37:21.
pointed 26:3.
policy 15:1.
portions 3:14.
position 3:4, 8:20, 9:5, 11:25, 16:18, 32:21, 33:2.
possible 30:20, 35:2, 38:4, 38:16.
post 3:12.
potential 34:21.
potentially 27:22.
power 37:5.
practical 5:24, 7:5, 15:17, 18:22.
practically 29:19.
precursor 5:3.
preface 14:2.
prefacing 16:9.
preferably 36:2.
prepared 5:15, 5:16, 5:17, 6:2.
Present 1:38.
presents 7:10.

pretty 18:6.
preventing 12:3, 12:6.
primarily 16:11.
problem 4:19, 32:10, 34:4.
proceed 27:6.
proceeding 29:3.
Proceedings 1:48, 7:1, 8:11, 9:8, 10:21, 27:10, 27:13, 39:16, 39:20.
proceedings. 11:20, 12:24, 17:10.
process 32:6.
produced 1:48.
professors 21:17.
program 19:5, 19:15, 20:1, 21:2.
progress 3:1, 29:4.
Progressive 13:15.
prove 35:11, 35:13.
provide 3:18, 14:14, 16:9, 32:13.
provided 15:10, 25:4.
PSO 19:18.
pulled 20:13, 21:19.
purpose 3:20.
pursuant 22:14, 22:17.
put 6:10, 6:21, 6:23, 9:8, 10:20, 15:22, 17:4, 18:17, 18:19, 26:7,

26:20, 34:24, 35:3, 38:9, 38:15.
.
.
< Q >.
quality 26:5, 26:11, 29:1.
question 4:24, 5:13, 5:18, 5:20, 5:23, 6:3, 7:9, 7:21, 9:11, 9:14, 9:24, 9:25, 10:1, 12:10, 12:15, 14:10, 14:21, 14:25, 15:1, 15:5, 15:8, 19:24, 20:2, 20:3, 20:4, 20:18, 21:4, 21:6, 21:25, 22:8, 23:3, 23:12, 31:22.
questions 5:22, 13:18, 13:19, 13:22, 13:24, 15:7, 15:21, 16:16, 18:16, 21:2, 35:22.
quickly 36:4, 38:3, 38:15.
quite 5:4, 35:1.
.
.
< R >.
raise 19:8.
raised 19:7, 21:2.
raises 19:3, 19:9, 19:23.
rather 13:18, 28:9.

re-examining 26:5.
reach 20:20, 30:21, 30:23, 31:3, 31:11, 38:2.
realize 10:8, 29:11.
really 4:24, 17:22.
reason 37:12, 39:8.
recalling 30:8.
receive 12:11.
received 10:6, 12:14, 23:25, 25:19.
recently 23:17.
recess 17:11, 17:17, 18:9, 30:7.
reckless 21:19.
record 2:5, 4:4, 4:15, 7:6, 20:6, 24:3, 25:24, 26:1, 30:11, 39:20.
recorded 1:48.
Reddy 1:23.
regard 37:16.
regulations 19:16.
reinstate 38:3.
reiterate 14:18.
relates 19:4, 19:16, 19:25, 21:9, 21:24.
relationship 21:1, 21:13.
relief 27:20,

28:14,
29:17.
removal 9:8,
27:10,
27:13.
repercussions
28:5.
report 2:18,
2:20.
Reported
1:41.
Reporter 1:42,
39:24.
representative
21:11, 21:12,
21:21, 21:23,
26:20.
representatives
20:20, 20:21,
20:22.
represented
31:24.
requesting
24:2.
requirement
22:1.
requires
21:7.
rescrubbing
26:1.
resolution 3:2,
30:20, 30:21,
30:24, 31:3,
31:11,
32:10.
respect 38:9.
respond 12:12,
12:16,
36:13.
response 7:5,
10:6, 12:11,
12:15, 14:14,
14:19, 32:13,
35:20, 35:22,
39:10.
responses
14:2.
restraining
27:1.
review 21:7,

29:1.
revisited 22:2,
22:3.
revocations
25:16.
revoked
23:11.
Richmond
1:24.
road 28:21.
routinely
25:1.
RPR 1:41,
39:18.
rules 36:15.
run 18:18.
Rutledge
1:29.
.
.
< S >.
S. 13:10, 23:2,
29:20.
satisfied 8:4,
20:15.
saw 2:15,
2:18.
saying 20:6,
26:18, 27:1,
30:1,
39:13.
says 5:5,
13:19, 15:2,
23:25,
25:9.
SC 1:30.
schedule 35:6,
35:15,
35:23.
school 12:3,
19:10, 19:14,
19:18, 19:21,
20:8, 20:10,
20:19, 21:12,
21:14, 28:3,
31:15, 32:8,
34:22.
schools 3:17,
3:19.
Schrodinger

9:23.
scope 27:23.
screw 31:12.
screwed 31:6.
screwing
37:8.
second 2:15,
2:18, 8:17.
Secretary
3:12.
Security 3:12,
16:10,
27:10.
seeing 37:15.
seek 8:24,
22:9, 28:13,
29:17.
seem 34:25.
seems 26:9,
27:3, 29:9.
seen 25:8.
sent 11:12,
34:24.
serious 11:7.
Services
22:11.
set 28:23.
setting
29:22.
settled 29:20,
39:6.
shall 21:25.
shorthand
1:48.
shouldn't
25:21,
31:17.
similar
37:24.
simple 7:9,
32:6.
sir 13:5,
13:12, 18:11,
24:24,
25:17.
situation
22:1.
somebody 3:25,
5:14, 15:3,
15:14.

somehow 11:5,
23:17.
someone 3:24,
4:7, 5:24,
6:1, 6:4,
6:17, 6:18,
7:10, 7:17,
12:20, 14:21,
14:22, 15:18,
18:23, 19:1,
20:6, 23:15,
26:17, 31:5,
31:22.
somewhere 15:2,
20:13,
34:24.
soon 17:20,
38:1.
sooner 29:8.
sorry 3:9,
5:17, 20:21,
22:3,
24:24.
sort 13:18.
sought 24:21,
27:20.
specific
12:10.
spending
31:19.
spoke 26:2,
30:20.
spot 28:1.
stalling
16:4.
stamp 25:4.
start 15:18.
starting 23:11,
30:11.
State 22:15,
23:10, 23:15,
24:1, 24:4,
24:16, 25:19,
25:20, 25:22,
25:23, 26:5,
26:11, 28:25,
29:10, 31:6,
31:13, 33:18,
33:24, 34:5,
34:6, 34:7.

stated 32:20,
    33:25,
    34:1.
statement
    32:22.
States 1:1,
    1:18, 1:33,
    8:25, 9:2,
    9:4, 9:9,
    9:20, 10:20,
    14:11, 19:17,
    22:16, 22:23,
    23:4, 23:6,
    23:8, 25:6,
    25:10, 25:12,
    25:13, 31:5,
    34:11,
    34:17.
status 2:18,
    3:14, 4:9,
    4:11, 4:16,
    7:18, 9:1,
    9:7, 10:4,
    10:12, 12:1,
    19:3, 22:24,
    22:25, 23:13,
    24:8, 24:11,
    24:21, 24:22,
    24:23, 25:7,
    31:25,
    35:4.
statute 3:16.
stay 6:8, 6:11,
    6:16, 6:18,
    6:20, 6:24,
    32:9.
Ste 1:24.
stenographic
    39:19.
steps 17:6,
    21:5.
Steve 30:13.
Steven 1:22,
    2:6.
stop 7:22,
    28:20,
    33:16.
straight-forwar
    d 31:21.
Street 1:35.

strides 29:4.
stripped
    27:10.
strong 29:10,
    29:12.
student 19:4,
    19:5, 19:12,
    19:14, 19:24,
    22:16, 25:23,
    26:14,
    37:18.
students 3:18,
    19:17.
studying 19:17,
    22:16.
subject
    15:19.
subsequent
    28:8.
suggest 37:2,
    37:3, 39:3.
supplement
    35:18.
supported
    32:23.
supposed 9:16,
    20:11, 26:9,
    31:16.
suspect
    28:16.
system 3:6,
    3:8, 3:16,
    4:15, 5:12,
    10:11,
    19:13.
.
.
< T >.
T. 1:41,
    39:23.
talked 10:2,
    21:17.
team 29:5.
tells 19:19.
temporary
    27:1.
ten 17:11.
tentatively
    29:22.
terminate 7:18,

9:7, 19:2,
    22:25.
terminated 4:5,
    4:7, 4:16,
    4:18, 5:2,
    5:11, 5:12,
    6:4, 7:6,
    9:6, 10:11,
    21:15, 23:19,
    24:3, 24:4,
    25:22, 25:24,
    29:12, 31:17,
    31:23, 32:1,
    33:17, 34:19,
    35:8.
terminating
    5:14, 14:20,
    14:22, 15:3,
    15:18, 18:22,
    19:1.
termination
    22:4, 22:7.
terms 7:5,
    19:25, 21:5,
    22:24.
testify 8:5.
Texas 20:14,
    21:20.
THE CLERK 2:2,
    36:9.
themselves 2:4,
    30:10.
they've 25:9,
    25:10,
    29:4.
thinking
    11:2.
thinks 4:25.
third 15:8.
though 22:19,
    31:23, 33:20,
    34:12,
    37:25.
Thursday
    34:14.
today 8:5,
    13:18, 28:3,
    35:4, 37:13,
    39:5.
Todd 2:3,

30:9.
TODD M. LYONS
    1:10.
tomorrow 28:4,
    36:3, 38:14,
    38:15.
totally 6:8.
touches 28:4.
tough 27:25.
towards 3:2.
Transcript
    1:16, 1:48,
    21:16,
    39:19.
transcription
    1:49.
transcripts
    20:9.
TRO 27:18,
    27:21, 28:9,
    29:14, 34:21,
    35:3, 35:4,
    35:24, 36:18,
    37:23, 37:24,
    38:13.
try 11:15,
    29:19.
trying 13:1,
    25:23,
    34:8.
Turn 6:21,
    6:25.
turned 22:14.
two 2:12, 2:14,
    2:19, 10:9,
    10:13, 13:13,
    13:22, 15:7,
    25:14, 26:23,
    34:22,
    37:19.
TX 1:25.
.
.
< U >.
understand
    4:17, 14:1,
    22:21, 24:16,
    26:8, 27:25,
    29:24, 37:22,
    39:14.

understanding
  3:3, 3:4,
  5:1.
Understood
  13:25, 14:9,
  17:5, 17:14,
  39:11,
  39:12.
unfortunate
  29:13.
Unfortunately
  16:17.
United 1:1,
  1:18, 1:33,
  8:25, 9:1,
  9:3, 9:9,
  9:19, 10:20,
  14:11, 19:17,
  22:16, 22:23,
  23:3, 23:6,
  23:8, 25:6,
  25:9, 25:11,
  25:13, 31:5,
  34:11,
  34:17.
until 6:12,
  6:18, 17:23,
  24:11, 29:20,
  32:1, 35:5,
  38:13,
  38:14.
.
.
< V >.
valid 8:23,
  8:24, 24:2,
  24:10, 24:11,
  33:19, 33:20,
  34:1.
validity 24:25,
  25:3, 34:2,
  34:4.
validly
  25:22.
various 26:5.
versus 2:3,
  8:25, 30:9.
video 2:22,
  6:22, 6:23,
  6:25, 7:24,

8:8, 12:22,
  18:5, 37:3.
violate 16:3.
visa 5:3, 5:4,
  8:20, 8:22,
  8:24, 9:23,
  23:10, 23:11,
  24:2, 24:5,
  24:6, 24:7,
  24:8, 24:10,
  24:17, 24:21,
  24:25, 25:3,
  25:12, 25:14,
  25:15, 25:21,
  29:11, 33:19,
  33:20, 34:1,
  34:2, 34:3,
  34:4, 34:6,
  34:7.
visas 3:21.
visitor 19:5,
  19:13,
  19:15.
vs 1:8.
.
.
< W >.
wait 5:25.
waiting 7:4,
  8:17, 8:19,
  12:22.
Walton 38:14.
wants 26:19.
Washington
  1:12, 1:36,
  1:44.
Watson 1:39,
  8:4, 11:6,
  15:12, 15:15,
  15:19, 15:21,
  17:2, 17:12,
  17:18, 18:10,
  22:19, 25:19,
  26:16, 28:20,
  28:25, 29:24,
  32:2, 36:18,
  36:21,
  39:4.
ways 26:23.
Wednesday

34:15,
  34:16.
week 34:16,
  36:15.
welcome
  18:10.
whatever 2:17,
  7:22.
whether 5:20,
  10:2, 10:3,
  10:14, 10:15,
  23:12, 27:12,
  32:4, 33:25,
  34:11, 34:17,
  34:22, 34:23,
  35:8, 35:9,
  36:23,
  37:19.
White 6:25.
Will 2:4, 11:9,
  13:23, 14:2,
  16:9, 17:5,
  18:18, 19:24,
  25:3, 25:6,
  26:21, 28:20,
  29:23, 30:10,
  30:13, 36:17,
  37:10, 37:21,
  38:2, 38:3.
willful
  33:22.
willing 11:6,
  30:21, 30:23,
  31:1, 31:3,
  31:11.
Wisconsin
  14:17, 21:11,
  21:14, 26:18,
  26:19.
within 4:13,
  5:12, 5:14,
  5:24, 6:5,
  35:4.
without
  37:16.
WITNESS 20:25,
  33:5, 33:18,
  36:22.
words 12:15.
work 32:7.

working 16:25,
  17:20, 21:1,
  21:13,
  25:10.
works 19:14.
worries
  18:14.
writing 2:17.
.
.
< Y >.
years 13:13.
yourself 6:10,
  6:21.
yourselves
  6:23, 28:7,
  29:16.
Yup 17:8.

<pre>
 1                   UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3  MANSI REDDY BUSHIREDDY,        )
                                   )
 4          Plaintiff,             )
                                   )
 5      vs.                        )  CASE NO. 1:25-cv-01102-SLS
                                   )
 6  TODD M. LYONS, Acting          )
    Director, U.S. Immigration     )
 7  and Customs Enforcement,       )
                                   )
 8          Defendant.             )
    _____  )
 9

10                  TRANSCRIPT OF TRO MOTION HEARING
        BEFORE THE HONORABLE SPARKLE L. SOOKNANAN, DISTRICT JUDGE
11                      Monday - April 21, 2025
                        2:59 p.m. - 3:46 p.m.
12                        Washington, DC

13  FOR THE PLAINTIFF:
            Banias Law, LLC
14          BY:  BRADLEY BRUCE BANIAS
            602 Rutledge Avenue
15          Charleston, South Carolina 29403
            (843) 352-4272
16

17  FOR THE DEFENDANT:
            United States Attorney's Office - Civil Division
18          BY:  JOSEPH F. CARILLI, JR.
            601 D Street, NW
19          Washington, DC 20001
            (202) 252-2525
20

21
    _____
22                        SONJA L. REEVES
                    Registered Diplomate Reporter
23                   Certified Realtime Reporter
                    Federal Official Court Reporter
24                   333 Constitution Avenue, NW
                         Washington, DC 20001
25          Transcript Produced from the Stenographic Record
</pre>

1           (Call to Order of the Court at 2:59 p.m.)

2           DEPUTY CLERK:  Your Honor, this is Civil Action

3  25-1102, *Bushireddy versus Lyons*.

4           Counsel, please come forward to identify yourselves

5  for the record, starting with the plaintiff.

6           MR. BANIAS:  Good afternoon, may it please the Court,

7  Brad Banias for the plaintiff, Your Honor.

8           THE COURT:  Good afternoon.

9           MR. CARILLI:  Good afternoon, Your Honor.  Joseph

10  Carilli on behalf of the government.

11           THE COURT:  Good afternoon, Counsel.

12           So we are here this afternoon on the plaintiff's

13  motion for a temporary restraining order.  I have reviewed all

14  the filings from both sides, including the latest notice of

15  supplemental authority that the plaintiff just filed.  I'm also

16  aware that this is one of many cases pending in this court

17  challenging the government's recent SEVIS terminations.

18           I am generally familiar with the other cases,

19  including all the orders entered by my colleagues and the new

20  case I just got last night.

21           So with that, I have some questions for both sides,

22  after which we will recess for a little and I will come back

23  and rule from the bench and follow up with a written order.

24           So I will actually start with the government today,

25  even though we're here on the plaintiff's motion.  Mr. Carilli?

1          (Mr. Carilli approaches podium.)

2          THE COURT:  Can you start by telling me about the

3    recent terminations in SEVIS?  Am I saying that right?  Is it

4    SEVIS?

5          MR. CARILLI:  Your Honor, I have heard it pronounced

6    "SEVIS" and "SEEVIS."

7          THE COURT:  I will go with "SEEVIS," if that's one

8    possible pronunciation.

9          So I have seen lots of news reporting, and there has

10   obviously been a bunch of filings in this court.  It appears

11   you're handling all of them somehow.  And all of those filings

12   tell me there was some recent mass termination effort by the

13   government.

14         Just start at a general level telling me how that mass

15   termination effort came about.

16         MR. CARILLI:  Your Honor, I'm not in a position to

17   discuss any mass termination.  I can speak as to what occurred

18   in this case.  Obviously, there was an event that occurred

19   along the same timeline.

20         THE COURT:  Mr. Carilli, how many of these cases do

21   you have that you're handling, because I have seen your

22   appearance on a number of them.  I have two of your cases.

23         MR. CARILLI:  I have entered a notice of appearance on

24   behalf of the government in 12 of these, and those are all of

25   these cases that are filed in this district.

1        THE COURT:  Are you telling me -- so you have been

2   working on these cases for how long?  When was the first one

3   assigned to you?

4        MR. CARILLI:  The first one assigned to me was on --

5   April 11th, I believe, was the first case, which would have

6   been a Friday.

7        THE COURT:  So about ten days you have been working on

8   these?

9        MR. CARILLI:  Yes, Your Honor.

10        THE COURT:  And so you don't know anything about what

11   event triggered all of these SEVIS terminations?

12        MR. CARILLI:  I'm unable to answer that question as

13   far as any questions about a mass action that may have occurred

14   at Immigration and Customs Enforcement.

15        THE COURT:  How did ICE identify the 12 students in

16   the cases you're handling?  What criteria did they use?

17        MR. CARILLI:  It generally plays along the same fact

18   pattern, Your Honor, where ICE received information from the

19   Department of State that an action was taken on a visa or that

20   an individual's visa validity period had expired.  Those are

21   two different things, either that the visa was revoked or that

22   the validity period for the visa had expired.  And --

23        THE COURT:  ICE received notice from the State

24   Department that these students' visas had been revoked or that

25   they had expired?

1          MR. CARILLI:  Generally speaking.  And so this is

2     what's referenced in the agency's declaration in paragraph

3     eight where you can see that there was a communication.

4          THE COURT:  I understand.  I just want a yes or no,

5     and I have read the declaration.

6          So you're saying that in some number of cases, ICE

7     received notice that the State Department had either revoked

8     visas or that visas had expired.  And what criteria did the

9     State Department use to identify these students?

10         MR. CARILLI:  I do not know what criteria they used.

11    I can just tell you as to what the communication that occurred

12    from the department --

13         THE COURT:  I don't need you to restate what's in the

14    declaration.  I have read it.  I have read the transcripts of

15    the proceedings before my colleagues in the other cases.

16         I'm asking you questions that I do not know the

17    answers to based on reviewing those documents, so if you are

18    not going to answer those questions, just tell me you're not

19    going to answer them and don't restate what's in the

20    declaration because I have already read it.

21         MR. CARILLI:  Yes, Your Honor.  As I stated

22    previously, when you asked about a mass event, I am not in a

23    position to discuss a mass event.  Plaintiff has brought a

24    claim about their individual --

25         THE COURT:  Counsel, if you just -- if you're not

1    going to answer my questions, again, just tell me you're not

2    going to answer them and tell me why, either because you don't

3    know the answer or you're not going to answer them.  I am very

4    familiar with the facts of this case and what plaintiff is

5    alleging, and I'm trying to get answers to questions that I do

6    not know the answers to.

7           How many students has ICE terminated in the past

8    couple weeks?

9           MR. CARILLI:  I'm not in a position to answer that

10   question.

11          THE COURT:  Do you know the answer to that question?

12          MR. CARILLI:  I do not know the answer to that

13   question.

14          THE COURT:  Who knows the answer to that question?

15   You're here representing ICE; is that not correct?

16          MR. CARILLI:  I'm here representing the government.

17          THE COURT:  And the plaintiff sued the acting director

18   of ICE; is that correct?

19          MR. CARILLI:  Correct, and they challenged --

20          THE COURT:  And so -- Mr. Carilli, so have you

21   conferred with your client in preparation for this hearing?

22          MR. CARILLI:  Well, Immigration and Customs

23   Enforcement --

24          THE COURT:  Yes or no?  Have you conferred -- who in

25   the government have you conferred with in preparation for this

1  hearing?

2        MR. CARILLI:  Your Honor, I, of course, discussed this

3  matter with counsel for the agency.

4        THE COURT:  So did you ask counsel for the agency or

5  did counsel for the agency tell you how many students have been

6  terminated in the past couple weeks?

7        MR. CARILLI:  Your Honor, I'm not in a position --

8        THE COURT:  Just yes or no.  Do you know the answer to

9  the question, yes or no?

10        MR. CARILLI:  As I stated, I do not know the answer to

11  that question.

12        THE COURT:  Okay.  I'm trying to get information from

13  you.  If you're not going to provide it, either because you

14  don't know it or you're not going to tell me today, we'll move

15  on and I will let you know what I expect for further

16  proceedings in this case.

17        Has the government identified mistakes in these recent

18  termination efforts?  Yes or no?

19        MR. CARILLI:  Your Honor, I'm not able to answer that

20  question, because, again --

21        THE COURT:  Based on testimony in another case last

22  week before one of my colleagues in *Patel versus Lyons*,

23  Mr. Watson said that, "ICE is," and I'm quoting, "rescrubbing

24  these lists."  What does that mean?

25        MR. CARILLI:  I do not have any information about his

1    testimony.  What he indicated during the court was that ICE is

2    looking again at the individuals, who some number of the

3    individuals who had their cases, their record changed from

4    active to terminated.

5          THE COURT:  Okay.  Let's move on to the effect of

6    SEVIS terminations.  You have said over and over that

7    terminating a student's status in SEVIS does not change their

8    immigration status and does not revoke the visa.  If that is

9    true, what is the point of changing the SEVIS status to

10    terminated?  There is some consequence, otherwise, the

11    government would not go about changing some number of students'

12    status from active to terminated.  So what is the point of

13    making that change?

14          MR. CARILLI:  The purpose of SEVIS is to communicate

15    and track individuals who are here in the United States on an

16    F, M or J visa.

17          THE COURT:  I understand that.  What is the point of

18    making a change in SEVIS from active to terminated?  That's the

19    question I'm asking.  And it's a question you have been asked

20    before and you have not answered.  So are you going to answer

21    me today, and, if no, is it because you do not know the answer

22    to the question or you're not going to answer me?

23          MR. CARILLI:  I do not know the answer to the

24    question.

25          THE COURT:  You do not know the answer to that

1  question, even though you have been asked it in hearing after

2  hearing before my colleagues?  You didn't go figure out the

3  answer from agency counsel after you were asked it the first

4  time and the second time and you didn't know the answer?

5          MR. CARILLI:  And I haven't received a response, Your

6  Honor, but, again, you're --

7          THE COURT:  You have asked that question of the agency

8  and the agency has not given you a response?  Yes or no?

9          MR. CARILLI:  No, they have not.  Your Honor --

10          THE COURT:  Counsel, I just want to get these

11  questions answered, figure out who I can get the answers from,

12  if I can't get it from you, and if you can't get it from your

13  client.

14          I want to talk about this notice of supplemental

15  authority that the plaintiff filed shortly before this hearing.

16  Do you have a copy of it?

17          MR. CARILLI:  I do not.  Plaintiff's counsel and I

18  spoke prior to --

19          THE COURT:  Counsel, do you have a copy of the notice

20  you filed that you can give to Mr. Carilli?

21          MR. BANIAS:  Not a paper copy, but I --

22          MR. CARILLI:  Plaintiff's counsel did notify me, Your

23  Honor, as to the contents of what he filed.

24          (The Court hands down a copy for defense counsel.)

25          MR. CARILLI:  Thank you.

1          THE COURT:  Okay.  So this looks to me like a notice

2     that was sent to an individual, but on the very first page of

3     this notice, which is quoting from that document, and I am

4     reading the last sentence of the first paragraph, it says,

5     "According to the beneficiary's SEVIS record, their F-1

6     nonimmigrant status was terminated on April 10, 2025 because of

7     the criminal records check and the revocation of their F-1

8     visa."

9          So doesn't this make clear that SEVIS termination has

10    something to do with immigration status?

11         MR. CARILLI:  Your Honor, without knowing the

12    circumstances of this, without being able to speak to

13    Citizenship and Immigration Services as to what the basis was

14    to make this decision and how they rendered that decision based

15    on their internal guidance and their regulations, I'm not able

16    to comment further on what occurred in this individual case.

17         THE COURT:  I'm not talking about this individual

18    case.  I'm asking you, based on this sentence and reading that

19    sentence, doesn't it appear to you that the SEVIS record has

20    some impact on immigration status?

21         MR. CARILLI:  In this specific circumstance, on this

22    decision by Citizenship and Immigration Services for what they

23    wrote, that appears to be what they stated.

24         THE COURT:  Okay.  Thank you, Counsel.

25         Tell me what message does a SEVIS termination send to

1    schools.  So when they look up a student and it says

2    "terminated," doesn't that mean that the student is not in an

3    active status?

4         MR. CARILLI:  It means that in the SEVIS record it is

5    not active, yes, Your Honor.

6         THE COURT:  What does that mean?  To be not active in

7    the SEVIS record, what does that mean?

8         MR. CARILLI:  It means that in the system of records,

9    that is the status of the individual -- that is the -- that's

10   the status.

11        THE COURT:  What does that mean, Counsel?  What is the

12   implication of not having an active record in the SEVIS system?

13        MR. CARILLI:  It doesn't affect their nonimmigrant

14   status.

15        THE COURT:  What does it mean?  What is the impact of

16   it?  Counsel, you have been asked this -- you were asked this

17   question last week by different judges on this court.  You said

18   you didn't have an answer.

19        You are representing to me today that you have since

20   asked your client the question and they have not provided you

21   with a response.  I assume you have told the client that

22   various judges on this court have asked the question and would

23   like to know the answer; is that correct?

24        MR. CARILLI:  Agency counsel is aware that judges have

25   asked questions and specifically along this line.  Again, Your

1  Honor --

2        THE COURT:  And they have not responded?

3        MR. CARILLI:  They have not provided a response.

4        THE COURT:  Okay, Counsel.  What actions are schools

5  taking when the government has changed the status in SEVIS to

6  terminated?

7        MR. CARILLI:  In these -- I do not know outside of

8  these 12 cases.

9        THE COURT:  So in these 12 instances, what actions

10  have schools taken when the government has changed the status

11  from active to terminated?

12        MR. CARILLI:  Generally, the schools have indicated to

13  the student that they should either cease attending class, so

14  cease their studies, or that they should cease performing their

15  OPT.

16        THE COURT:  So this change that you have represented

17  to me and that your declarant has represented to this court

18  multiple times as having no impact whatsoever on these

19  students' status is nonetheless leading schools to stop those

20  students from attending classes or their practical OPT

21  training, yes?

22        MR. CARILLI:  There have been some schools --

23        THE COURT:  Yes or no?

24        MR. CARILLI:  There have been some schools that have

25  done that and some have not, and as I stated --

1    THE COURT:  Okay, Counsel.  Let's move on to this

2 plaintiff, Ms. Bushireddy.  Why was her status terminated in

3 SEVIS?

4    MR. CARILLI:  As it stated in the agency declaration,

5 it was based on a criminal history, and they amended -- changed

6 the record from active to terminated.

7    THE COURT:  What criminal history?  Is it the

8 government's position that she has a criminal record?

9    MR. CARILLI:  It is the government's position that she

10 has criminality in her background and she has --

11    THE COURT:  Yes or no, is it the government's position

12 that she has a criminal record?  Please answer my question, not

13 the question you want to answer.

14    MR. CARILLI:  Yes.  Based on the agency's declarant,

15 yes.

16    THE COURT:  That she has a criminal record for being

17 arrested for shoplifting and those charges having been

18 dismissed by a judge, it's your position that that means she

19 has a criminal record?

20    MR. CARILLI:  Yes.

21    THE COURT:  Okay.  What's the government's position on

22 her immigration status, her current immigration status?

23    MR. CARILLI:  As is stated in the agency declaration,

24 the agency and the government has not revoked --

25    THE COURT:  Is it the government's position that she

1  is legally in the United States on a valid F-1 visa right now?

2        MR. CARILLI:  That I am not able to answer.  As the

3  agency --

4        THE COURT:  The government does not know whether this

5  plaintiff is currently legally in the United States?

6        MR. CARILLI:  No, because that is an --

7        THE COURT:  Counsel --

8        MR. CARILLI:  Your Honor --

9        THE COURT:  Counsel, you're standing here today on

10  behalf of the United States and you're telling me that you do

11  not know whether this plaintiff is legally in the United

12  States?  How is she supposed to know the answer to that

13  question if you don't?

14        MR. CARILLI:  Your Honor, as Immigration and Customs

15  Enforcement and as Mr. Watson stated in the courtroom with

16  Judge Reyes, it is an operational question.  It is an

17  assessment on whether or not an individual is in the country

18  lawfully.

19        It is also a question of whether or not -- it's

20  something that arises out of a decision as to whether or not to

21  place an individual in removal proceedings, which, again, is a

22  prosecution question and a civil enforcement.

23        THE COURT:  Counsel, you're telling me that the

24  government does not know whether this plaintiff is legally in

25  the United States on a valid F-1 visa?  Yes or no?

1    MR. CARILLI:  What I have stated --

2    THE COURT:  Yes or no?

3    MR. CARILLI:  What I --

4    THE COURT:  Is this plaintiff currently legally in the

5  United States?

6    MR. CARILLI:  Your Honor, I can tell you that the

7  status wasn't revoked, and Immigration and Customs Enforcement

8  has indicated that that question and the answer to that

9  question is an operational --

10    THE COURT:  It's a question the government should know

11  the answer to, whether it's operational or not, correct?

12    MR. CARILLI:  I don't know that I would agree with

13  that, Your Honor, and I would also state that that is a

14  question about -- that's arising for a decision on whether or

15  not to place someone on removal proceedings, which Congress has

16  said is outside of district court's jurisdiction.

17    THE COURT:  Counsel, I am asking you a factual

18  question about whether this plaintiff is legally in the United

19  States, and you are telling me that you do not know the answer

20  to that question and that the government cannot tell me whether

21  this plaintiff is legally in the United States.

22    Let me ask you another question.

23    MR. CARILLI:  Your Honor --

24    THE COURT:  What is the government's position on

25  whether this plaintiff can continue her practical studies?

1      MR. CARILLI:  Your Honor, if I could go back to your

2  other question.

3      THE COURT:  I would like you to answer my question.

4  Can you tell me whether this plaintiff can continue her

5  practical studies?

6      MR. CARILLI:  I have asked -- there is nothing -- what

7  Immigration and Customs Enforcement --

8      THE COURT:  Can she do that, yes or no?

9      MR. CARILLI:  That has been asked of the agency, and I

10  have -- I can't give you --

11      THE COURT:  You have not received a response?  Okay.

12      MR. CARILLI:  I cannot give you an answer to that.

13      THE COURT:  Okay.  Thank you, Mr. Carilli.  You can

14  sit down.

15      MR. CARILLI:  Your Honor, I would like --

16      THE COURT:  What would you like to clarify, Counsel,

17  because most of your answers are non answers.  You are telling

18  me things you want to tell me and you are not answering most of

19  the questions that I am asking you.  What would you like to

20  tell me?

21      MR. CARILLI:  Your Honor, I would like to comment,

22  like, the determination on whether or not someone is lawfully

23  present in the United States is not a factual question.  It is

24  a legal question.  And if ICE needs to be able to put that

25  forward and decides that they believe an individual is

1   unlawfully present in the United States, they would put the

2   individual on removal proceedings, at which time they would

3   have to go before an immigration judge and --

4           THE COURT:  I understand how that works, Counsel.

5   You're telling me you do not know the plaintiff's current

6   status.  That is what you have told me today.

7           MR. CARILLI:  What I said is that the SEVIS

8   termination was not a revocation of their F-1 status.  Whether

9   or not --

10          THE COURT:  I understand that that's what you have

11  told the Court.  Thank you, Counsel.

12          MR. CARILLI:  But, Your Honor, I would only comment

13  that that type of question as to whether or not --

14          THE COURT:  Counsel, you have said that to this Court.

15  You have said it multiple times.  You have said it to other

16  courts.  As you have heard, no judge is satisfied with that

17  answer.  Thank you.

18          MR. CARILLI:  Excuse me, Your Honor.  Thank you.

19          THE COURT:  Counsel, I have a couple of questions for

20  you.

21          (Mr. Banias approaches the podium.)

22          THE COURT:  Is your client going to her practical

23  training at this point?

24          MR. BANIAS:  No, Your Honor.

25          THE COURT:  Is she permitted to continue from her

1  perspective?  Has the school stopped her from pursuing her OPT?

2        MR. BANIAS:  Your Honor, on ECF 8-2, page 3, the

3  University of Texas at Arlington told her that this ends her

4  OPT and that she's no longer in status, so no.

5        THE COURT:  Okay.  Thank you, Counsel.

6        I am going to recess for about ten minutes, and I will

7  come back and make an oral ruling.  And then I will enter a

8  written order and talk about next steps.

9     (Recessed from 3:20 p.m. to 3:38 p.m.)

10        DEPUTY CLERK:  Your Honor, we're back on record for

11  Civil Action 25-1102, *Bushireddy versus Lyons*.

12        THE COURT:  Thank you.

13        Okay.  Counsel, thank you for answering my questions.

14        I am going to enter a temporary restraining order in

15  this case.  TROs are intended to preserve the status quo for a

16  limited period of time in order to prevent irreparable harm

17  and allow the Court to decide the merits of a case.

18        This case, which involves an international student

19  validly admitted to our country, who now faces an imminent risk

20  of arrest and deportation, is the very reason that the TRO

21  mechanism exists.

22        I am well aware that a temporary restraining order is

23  an extraordinary and drastic remedy.  The plaintiff, as the

24  moving party, has the burden to establish that she is likely to

25  succeed on the merits, facing an irreparable injury, the TRO

1    would not substantially harm other parties, and that it

2    furthers the public interest.  I find that the plaintiff has

3    done that in this case.

4          Ms. Bushireddy is an Indian national who has been

5    living and studying in the United States since 2022 under a

6    valid F-1 student visa.  A little over two weeks ago, her

7    university notified her that ICE had terminated her status in

8    the SEVIS system, which is a database the State Department uses

9    to track international students.

10         ICE's termination was sudden and it did not provide

11    Ms. Bushireddy, who is a student legally admitted to the United

12    States, with any notice, reasoning, opportunity to be heard or

13    avenue to challenge the decision.

14         Starting with likelihood of success on the merits, at

15    this stage of the proceedings, the Court finds the plaintiff's

16    arguments compelling.  The government's hasty termination of

17    her SEVIS record with no notice or opportunity to be heard

18    appears arbitrary and capricious in violation of the

19    Administrative Procedure Act.

20         Standing here today, ten days after first being

21    assigned to these cases, government counsel could not provide

22    basic details about the government's recent SEVIS terminations,

23    and we know from testimony in another case that the government

24    is, quote, "rescrubbing," end quote, the termination lists,

25    suggesting there may have been errors.

1        In the absence of answers from the government, the

2   plaintiff is left to speculate about the reason the government

3   terminated her record and whether and how she may correct this

4   alleged mistake.  The plaintiff has thus shown a likelihood of

5   success on the merits.

6        Turning to irreparable harm, the SEVIS termination

7   seems poised to trigger a series of consequences, many of which

8   may well be irreversible.  The government has argued that the

9   termination has no impact on the plaintiff's immigration

10  status, but it cannot explain why the termination happened if

11  it indeed has no consequence whatsoever.  This is a question

12  other judges on this court have asked the government over and

13  over and no judge has gotten a straight answer.

14       The government also cannot assure the Court of the

15  plaintiff's legal status.  While it represents that SEVIS

16  termination does not impact immigration status, government

17  counsel cannot tell me whether the plaintiff is here in the

18  United States legally.  This is unacceptable.

19       The plaintiff quite reasonably fears for her safety.

20  The Court has no assurance that the plaintiff will not be

21  picked up and deported to El Salvador or some other country

22  tomorrow.

23       There are other ways the plaintiff is experiencing

24  irreparable harm.  Her university has told her that she no

25  longer has status to continue her optional practical training,

1    she's no longer authorized to work in the United States,

2    barring her from the very activity that formed the basis for

3    her legal residence.

4         The government argues that monetary harms resulting

5    from the loss of work ordinarily do not constitute irreparable

6    harm, but that is because economic injuries are generally in

7    fact repairable with monetary damages in the ordinary course of

8    litigation.  That is not true for this plaintiff.

9         Ms. Bushireddy's loss of her work authorization is not

10   just about money; it is about her ability to live legally in

11   the United States.  No amount of money can provide her

12   immigration status.  For all those reasons the plaintiff has

13   established irreparable harm.

14        Finally, the balance of hardships and consideration of

15   the public interest favor the plaintiff.  The underlying

16   purpose of a temporary restraining order is to preserve the

17   status quo and prevent irreparable harm until the Court has an

18   opportunity to rule on the merits, and the temporary

19   restraining order will not harm the defendant or any other

20   party.  This is particularly true given that the government has

21   not presented any evidence that the plaintiff's continued

22   presence here poses a threat to national security.

23        For all those reasons, I am granting your temporary

24   restraining order in this case.  The United States admitted

25   Ms. Bushireddy legally, then appears to have revoked her status

1    without notice or reason.  This not only runs contrary to

2    fundamental principles of fairness, but to the mission of the

3    very program in which she was enrolled.

4         The State Department's optional practical training

5    program, which entitled the plaintiff to an extension on her

6    F-1 visa, was designed for the twin purposes of providing

7    international students experience in their field, and as the

8    State Department's own website states, to quote, "help U.S.

9    colleges and universities remain globally competitive in

10   attracting international students to study and lawfully remain

11   in the United States," end quote.

12        The government seems to have lost its way.

13        I am going to enter a written order right after this

14   hearing.  And in terms of next steps, that order will require

15   briefing on the preliminary injunction.

16        The plaintiffs are to file their preliminary

17   injunction papers by April 25th.

18        The government is to file any opposition by May 2nd.

19        The plaintiff should reply by May 4th.

20        And I'm going to hold a preliminary injunction hearing

21   on May 5th at 10:00 a.m., at which I expect the government to

22   provide answers to the questions it was not able to answer

23   today, either through counsel or through the government's

24   declarant or other witnesses.

25        Any questions from either side?

1          MR. BANIAS:  None from the plaintiff, Your Honor.

2          THE COURT:  Thank you, Counsel.

3          MR. CARILLI:  Your Honor, government counsel, on

4    May 5th, I have a prescheduled mediation in a Title VII matter.

5          THE COURT:  At what time, Counsel?

6          MR. CARILLI:  It is an all day session.  It is with

7    the circuit mediation program.

8          THE COURT:  Counsel --

9          MR. CARILLI:  I'm sorry, Your Honor.  I would just ask

10   if we move into the later half of the afternoon, I will make it

11   work with the circuit mediator if we hold the hearing at

12   3:30 or 4:00.

13         THE COURT:  Let's do it at 3:30.

14         MR. CARILLI:  Thank you, Your Honor.

15         THE COURT:  No problem.

16         Okay, Counsel.  Thank you.  I will enter my order

17   shortly.  And I will see you on Wednesday, Mr. Carilli.

18      (Proceedings concluded at 3:46 p.m.)

19

20

21

22

23

24

25

CERTIFICATE

     I, Sonja L. Reeves, Federal Official Court Reporter in and
for the United States District Court of the District of
Columbia, do hereby certify that the foregoing transcript is a
true and accurate transcript from the original stenographic
record in the above-entitled matter and that the transcript
page format is in conformance with the regulations of the
Judicial Conference of the United States.

     Dated this 21st day of April, 2025.



                              /s/ Sonja L. Reeves
                         SONJA L. REEVES, RDR-CRR
                         FEDERAL OFFICIAL COURT REPORTER

## /

/s [1] - 24:8

## 1

10 [1] - 10:6
10:00 [1] - 22:21
11th [1] - 4:5
12 [4] - 3:24, 4:15, 12:8, 12:9
1:25-cv-01102-SLS [1] - 1:5

## 2

20001 [2] - 1:19, 1:24
202 [1] - 1:19
2022 [1] - 19:5
2025 [3] - 1:11, 10:6, 24:6
21 [1] - 1:11
21st [1] - 24:6
25-1102 [2] - 2:3, 18:11
252-2525 [1] - 1:19
25th [1] - 22:17
29403 [1] - 1:15
2:59 [2] - 1:11, 2:1
2nd [1] - 22:18

## 3

3 [1] - 18:2
333 [1] - 1:24
352-4272 [1] - 1:15
3:20 [1] - 18:9
3:30 [2] - 23:12, 23:13
3:38 [1] - 18:9
3:46 [2] - 1:11, 23:18

## 4

4:00 [1] - 23:12
4th [1] - 22:19

## 5

5th [2] - 22:21, 23:4

## 6

601 [1] - 1:18
602 [1] - 1:14

## 8

8-2 [1] - 18:2
843 [1] - 1:15

## A

a.m [1] - 22:21
ability [1] - 21:10
able [6] - 7:19, 10:12, 10:15, 14:2, 16:24, 22:22
above-entitled [1] - 24:4
absence [1] - 20:1
According [1] - 10:5
accurate [1] - 24:3
Act [1] - 19:19
acting [1] - 6:17
Acting [1] - 1:6
action [2] - 4:13, 4:19
Action [2] - 2:2, 18:11
actions [2] - 12:4, 12:9
active [9] - 8:4, 8:12, 8:18, 11:3, 11:5, 11:6, 11:12, 12:11, 13:6
activity [1] - 21:2
Administrative [1] - 19:19
admitted [3] - 18:19, 19:11, 21:24
affect [1] - 11:13
afternoon [6] - 2:6, 2:8, 2:9, 2:11, 2:12, 23:10
agency [12] - 7:3, 7:4, 7:5, 9:3, 9:7, 9:8, 11:24, 13:4, 13:23, 13:24, 14:3, 16:9
agency's [2] - 5:2, 13:14
ago [1] - 19:6
agree [1] - 15:12
alleged [1] - 20:4
alleging [1] - 6:5
allow [1] - 18:17
amended [1] - 13:5
amount [1] - 21:11
answer [35] - 4:12, 5:18, 5:19, 6:1, 6:2, 6:3, 6:9, 6:11, 6:12, 6:14, 7:8, 7:10, 7:19, 8:20, 8:21, 8:22, 8:23, 8:25, 9:3, 9:4, 11:18, 11:23, 13:12, 13:13, 14:2, 14:12, 15:8, 15:11, 15:19, 16:3, 16:12, 17:17, 20:13, 22:22
answered [2] - 8:20, 9:11
answering [2] -

16:18, 18:13
answers [8] - 5:17, 6:5, 6:6, 9:11, 16:17, 20:1, 22:22
appear [1] - 10:19
appearance [2] - 3:22, 3:23
approaches [2] - 3:1, 17:21
April [4] - 1:11, 4:5, 10:6, 22:17
arbitrary [1] - 19:18
argued [1] - 20:8
argues [1] - 21:4
arguments [1] - 19:16
arises [1] - 14:20
arising [1] - 15:14
Arlington [1] - 18:3
arrest [1] - 18:20
arrested [1] - 13:17
assessment [1] - 14:17
assigned [3] - 4:3, 4:4, 19:21
assume [1] - 11:21
assurance [1] - 20:20
assure [1] - 20:14
attending [2] - 12:13, 12:20
Attorney's [1] - 1:17
attracting [1] - 22:10
authority [2] - 2:15, 9:15
authorization [1] - 21:9
authorized [1] - 21:1
avenue [1] - 19:13
Avenue [2] - 1:14, 1:24
aware [3] - 2:16, 11:24, 18:22

## B

background [1] - 13:10
balance [1] - 21:14
Banias [3] - 1:13, 2:7, 17:21
BANIAS [6] - 1:14, 2:6, 9:21, 17:24, 18:2, 23:1
barring [1] - 21:2
based [6] - 5:17, 7:21, 10:14, 10:18, 13:5, 13:14
basic [1] - 19:22
basis [2] - 10:13,

21:2
BEFORE [1] - 1:10
behalf [3] - 2:10, 3:24, 14:10
bench [1] - 2:23
beneficiary's [1] - 10:5
Brad [1] - 2:7
BRADLEY [1] - 1:14
briefing [1] - 22:15
brought [1] - 5:23
BRUCE [1] - 1:14
bunch [1] - 3:10
burden [1] - 18:24
Bushireddy [6] - 2:3, 13:2, 18:11, 19:4, 19:11, 21:25
BUSHIREDDY [1] - 1:3
Bushireddy's [1] - 21:9
BY [2] - 1:14, 1:18

## C

cannot [5] - 15:20, 16:12, 20:10, 20:14, 20:17
capricious [1] - 19:18
CARILLI [67] - 1:18, 2:9, 3:5, 3:16, 3:23, 4:4, 4:9, 4:12, 4:17, 5:1, 5:10, 5:21, 6:9, 6:12, 6:16, 6:19, 6:22, 7:2, 7:7, 7:10, 7:19, 7:25, 8:14, 8:23, 9:5, 9:9, 9:17, 9:22, 9:25, 10:11, 10:21, 11:4, 11:8, 11:13, 11:24, 12:3, 12:7, 12:12, 12:22, 12:24, 13:4, 13:9, 13:14, 13:20, 13:23, 14:2, 14:6, 14:8, 14:14, 15:1, 15:3, 15:6, 15:12, 15:23, 16:1, 16:6, 16:9, 16:12, 16:15, 16:21, 17:7, 17:12, 17:18, 23:3, 23:6, 23:9, 23:14
Carilli [8] - 2:10, 2:25, 3:1, 3:20, 6:20, 9:20, 16:13, 23:17
Carolina [1] - 1:15
case [14] - 2:20, 3:18, 4:5, 6:4, 7:16, 7:21, 10:16, 10:18, 18:15, 18:17, 18:18, 19:3, 19:23, 21:24

21:2
CASE [1] - 1:5
cases [12] - 2:16, 2:18, 3:20, 3:22, 3:25, 4:2, 4:16, 5:6, 5:15, 8:3, 12:8, 19:21
cease [3] - 12:13, 12:14
CERTIFICATE [1] - 24:1
Certified [1] - 1:23
certify [1] - 24:3
challenge [1] - 19:13
challenged [1] - 6:19
challenging [1] - 2:17
change [4] - 8:7, 8:13, 8:18, 12:16
changed [4] - 8:3, 12:5, 12:10, 13:5
changing [2] - 8:9, 8:11
charges [1] - 13:17
Charleston [1] - 1:15
check [1] - 10:7
circuit [2] - 23:7, 23:11
circumstance [1] - 10:21
circumstances [1] - 10:12
Citizenship [2] - 10:13, 10:22
Civil [3] - 1:17, 2:2, 18:11
civil [1] - 14:22
claim [1] - 5:24
clarify [1] - 16:16
class [1] - 12:13
classes [1] - 12:20
clear [1] - 10:9
CLERK [2] - 2:2, 18:10
client [5] - 6:21, 9:13, 11:20, 11:21, 17:22
colleagues [4] - 2:19, 5:15, 7:22, 9:2
colleges [1] - 22:9
COLUMBIA [1] - 1:1
Columbia [1] - 24:3
comment [2] - 10:16, 16:21, 17:12
communicate [1] - 8:14
communication [2] - 5:3, 5:11
compelling [1] - 19:16
competitive [1] - 22:9

concluded [1] - 23:18
Conference [1] - 24:5
conferred [3] - 6:21, 6:24, 6:25
conformance [1] - 24:4
Congress [1] - 15:15
consequence [2] - 8:10, 20:11
consequences [1] - 20:7
consideration [1] - 21:14
constitute [1] - 21:5
Constitution [1] - 1:24
contents [1] - 9:23
continue [4] - 15:25, 16:4, 17:25, 20:25
continued [1] - 21:21
contrary [1] - 22:1
copy [4] - 9:16, 9:19, 9:21, 9:24
correct [6] - 6:15, 6:18, 6:19, 11:23, 15:11, 20:3
counsel [24] - 2:4, 5:25, 7:3, 7:4, 7:5, 9:3, 9:10, 9:17, 9:19, 9:22, 9:24, 11:16, 11:24, 14:7, 14:9, 14:23, 15:17, 17:14, 17:19, 19:21, 20:17, 22:23, 23:3, 23:8
Counsel [13] - 2:11, 10:24, 11:11, 12:4, 13:1, 16:16, 17:4, 17:11, 18:5, 18:13, 23:2, 23:5, 23:16
country [3] - 14:17, 18:19, 20:21
couple [3] - 6:8, 7:6, 17:19
course [2] - 7:2, 21:7
COURT [74] - 1:1, 2:8, 2:11, 3:2, 3:7, 3:20, 4:1, 4:7, 4:10, 4:15, 4:23, 5:4, 5:13, 5:25, 6:11, 6:14, 6:17, 6:20, 6:24, 7:4, 7:8, 7:12, 7:21, 8:5, 8:17, 8:25, 9:7, 9:10, 9:19, 10:1, 10:17, 10:24, 11:6, 11:11, 11:15, 12:2, 12:4, 12:9, 12:16, 12:23, 13:1, 13:7, 13:11, 13:16, 13:21, 13:25, 14:4,

14:7, 14:9, 14:23, 15:2, 15:4, 15:10, 15:17, 15:24, 16:3, 16:8, 16:11, 16:13, 16:16, 17:4, 17:10, 17:14, 17:19, 17:22, 17:25, 18:5, 18:12, 23:2, 23:5, 23:8, 23:13, 23:15, 24:9
court [7] - 2:16, 3:10, 8:1, 11:17, 11:22, 12:17, 20:12
Court [13] - 1:23, 2:1, 2:6, 9:24, 17:11, 17:14, 18:17, 19:15, 17:17, 20:20, 21:17, 24:2, 24:2
court's [1] - 15:16
courtroom [1] - 14:15
courts [1] - 17:16
criminal [7] - 10:7, 13:4, 13:7, 13:8, 13:12, 13:16, 13:19
criminality [1] - 13:10
criteria [3] - 4:16, 5:8, 5:10
CRR [1] - 24:8
current [2] - 13:22, 17:5
Customs [6] - 1:7, 4:14, 6:22, 14:14, 15:7, 16:7

D

damages [1] - 21:7
database [1] - 19:8
Dated [1] - 24:6
days [2] - 4:7, 19:20
DC [3] - 1:12, 1:19, 1:24
decide [1] - 18:17
decides [1] - 16:25
decision [6] - 10:14, 10:22, 14:20, 15:14, 19:13
declarant [1] - 12:17, 13:14, 22:24
declaration [6] - 5:2, 5:5, 5:14, 5:20, 13:4, 13:23
defendant [1] - 21:19
Defendant [1] - 1:8
DEFENDANT [1] - 1:17
defense [1] - 9:24
Department [5] - 4:19, 4:24, 5:7, 5:9,

19:8
department [1] - 5:12
Department's [2] - 22:4, 22:8
deportation [1] - 18:20
deported [1] - 20:21
DEPUTY [2] - 2:2, 18:10
designed [1] - 22:6
details [1] - 19:22
determination [1] - 16:22
different [2] - 4:21, 11:17
Diplomate [1] - 1:22
Director [1] - 1:6
director [1] - 6:17
discuss [2] - 3:17, 5:23
discussed [1] - 7:2
dismissed [1] - 13:18
DISTRICT [3] - 1:1, 1:1, 1:10
district [2] - 3:25, 15:16
District [1] - 24:2
Division [1] - 1:17
document [1] - 10:3
documents [1] - 5:17
done [2] - 12:25, 19:3
down [2] - 9:24, 16:14
drastic [1] - 18:23
during [1] - 8:1

E

ECF [1] - 18:2
economic [1] - 21:6
effect [1] - 8:5
effort [2] - 3:12, 3:15
efforts [1] - 7:18
eight [1] - 5:3
either [7] - 4:21, 5:7, 6:2, 7:13, 12:13, 22:23, 22:25
EI [1] - 20:21
end [2] - 19:24, 22:11
ends [1] - 18:3
Enforcement [6] - 1:7, 4:14, 6:23, 14:15, 15:7, 16:7
enforcement [1] - 14:22
enrolled [1] - 22:3

enter [4] - 18:7, 18:14, 22:13, 23:16
entered [2] - 2:19, 3:23
entitled [2] - 22:5, 24:4
errors [1] - 19:25
establish [1] - 18:24
established [1] - 21:13
event [4] - 3:18, 4:11, 5:22, 5:23
evidence [1] - 21:21
excuse [1] - 17:18
exists [1] - 18:21
expect [2] - 7:15, 22:21
experience [1] - 22:7
experiencing [1] - 20:23
expired [4] - 4:20, 4:22, 4:25, 5:8
explain [1] - 20:10
extension [1] - 22:5
extraordinary [1] - 18:23

F

F-1 [7] - 10:5, 10:7, 14:1, 14:25, 17:8, 19:6, 22:6
faces [1] - 18:19
facing [1] - 18:25
fact [2] - 4:17, 21:7
facts [1] - 6:4
factual [2] - 15:17, 16:23
fairness [1] - 22:2
familiar [2] - 2:18, 6:4
far [1] - 4:13
favor [1] - 21:15
fears [1] - 20:19
Federal [1] - 24:2
federal [1] - 1:23
FEDERAL [1] - 24:9
field [1] - 22:7
figure [2] - 9:2, 9:11
file [2] - 22:16, 22:18
filed [5] - 2:15, 3:25, 9:15, 9:20, 9:23
filings [3] - 2:14, 3:10, 3:11
finally [1] - 21:14
first [7] - 4:2, 4:4, 4:5, 9:3, 10:2, 10:4, 19:20
follow [1] - 2:23
FOR [3] - 1:1, 1:13,

1:17
foregoing [1] - 24:3
format [1] - 24:4
formed [1] - 21:2
forward [2] - 2:4, 16:25
Friday [1] - 4:6
fundamental [1] - 22:2
furthers [1] - 19:2

G

general [1] - 3:14
generally [5] - 2:18, 4:17, 5:1, 12:12, 21:6
given [2] - 9:8, 21:20
globally [1] - 22:9
government [29] - 2:10, 2:24, 3:13, 3:24, 6:16, 6:25, 7:17, 8:11, 12:5, 12:10, 13:24, 14:4, 14:24, 15:10, 15:20, 19:21, 19:23, 20:1, 20:2, 20:8, 20:12, 20:14, 20:16, 21:4, 21:20, 22:12, 22:18, 22:21, 23:3
government's [10] - 2:17, 13:8, 13:9, 13:11, 13:21, 13:25, 15:24, 19:16, 19:22, 22:23
granting [1] - 21:23
guidance [1] - 10:15

H

half [1] - 23:10
handling [3] - 3:11, 3:21, 4:16
hands [1] - 9:24
hardships [1] - 21:14
harm [8] - 18:16, 19:1, 20:6, 20:24, 21:6, 21:13, 21:17, 21:19
harms [1] - 21:4
hasty [1] - 19:16
heard [4] - 3:5, 17:16, 19:12, 19:17
hearing [8] - 6:21, 7:1, 9:1, 9:2, 9:15, 22:14, 22:20, 23:11
HEARING [1] - 1:10
help [1] - 22:8
hereby [1] - 24:3
history [2] - 13:5, 13:7
hold [2] - 22:20,

23:11

**Honor** [34] - 2:2, 2:7, 2:9, 3:5, 3:16, 4:9, 4:18, 5:21, 7:2, 7:7, 7:19, 9:6, 9:9, 9:23, 10:11, 11:5, 12:1, 14:8, 14:14, 15:6, 15:13, 15:23, 16:1, 16:15, 16:21, 17:12, 17:18, 17:24, 18:2, 18:10, 23:1, 23:3, 23:9, 23:14

**HONORABLE** [1] - 1:10

**I**

**ICE** [11] - 4:15, 4:18, 4:23, 5:6, 6:7, 6:15, 6:18, 7:23, 8:1, 16:24, 19:7

**ICE's** [1] - 19:10

**identified** [1] - 7:17

**identify** [3] - 2:4, 4:15, 5:9

**Immigration** [8] - 1:6, 4:14, 6:22, 10:13, 10:22, 14:14, 15:7, 16:7

**immigration** [9] - 8:8, 10:10, 10:20, 13:22, 17:3, 20:9, 20:16, 21:12

**imminent** [1] - 18:19

**impact** [5] - 10:20, 11:15, 12:18, 20:9, 20:16

**implication** [1] - 11:12

**including** [2] - 2:14, 2:19

**indeed** [1] - 20:11

**Indian** [1] - 19:4

**indicated** [3] - 8:1, 12:12, 15:8

**individual** [9] - 5:24, 10:2, 10:16, 10:17, 11:9, 14:17, 14:21, 16:25, 17:2

**individual's** [1] - 4:20

**individuals** [3] - 8:2, 8:3, 8:15

**information** [3] - 4:18, 7:12, 7:25

**injunction** [3] - 22:15, 22:17, 22:20

**injuries** [1] - 21:6

**injury** [1] - 18:25

**instances** [1] - 12:9

intended - 18:15

**interest** [2] - 19:2, 21:15

**internal** [1] - 10:15

**international** [4] - 18:18, 19:9, 22:7, 22:10

**involves** [1] - 18:18

**irreparable** [7] - 18:16, 18:25, 20:6, 20:24, 21:5, 21:13, 21:17

**irreversible** [1] - 20:8

**J**

**JOSEPH** [1] - 1:18

**Joseph** [1] - 2:9

**JR** [1] - 1:18

**judge** [4] - 13:18, 17:3, 17:16, 20:13

**JUDGE** [1] - 1:10

**Judge** [1] - 14:16

**judges** [4] - 11:17, 11:22, 11:24, 20:12

**Judicial** [1] - 24:5

**jurisdiction** [1] - 15:16

**K**

**knowing** [1] - 10:11

**knows** [1] - 6:14

**L**

**last** [4] - 2:20, 7:21, 10:4, 11:17

**latest** [1] - 2:14

**Law** [1] - 1:13

**lawfully** [3] - 14:18, 16:22, 22:10

**leading** [1] - 12:19

**left** [1] - 20:2

**legal** [3] - 16:24, 20:15, 21:3

**legally** [11] - 14:1, 14:5, 14:11, 14:24, 15:4, 15:18, 15:21, 19:11, 20:18, 21:10, 21:25

**level** [1] - 3:14

**likelihood** [2] - 19:14, 20:4

**likely** [1] - 18:24

**limited** [1] - 18:16

**line** [1] - 11:25

**lists** [2] - 7:24, 19:24

**litigation** [1] - 21:8

**live** [1] - 21:10

**living** [1] - 19:5

**LLC** [1] - 1:13

**look** [1] - 11:1

**looking** [1] - 8:2

**looks** [1] - 10:1

**loss** [2] - 21:5, 21:9

**lost** [1] - 22:12

**LYONS** [1] - 1:6

**Lyons** [3] - 2:3, 7:22, 18:11

**M**

**MANSI** [1] - 1:3

**mass** [6] - 3:12, 3:14, 3:17, 4:13, 5:22, 5:23

**matter** [3] - 7:3, 23:4, 24:4

**mean** [6] - 7:24, 11:2, 11:6, 11:7, 11:11, 11:15

**means** [3] - 11:4, 11:8, 13:18

**mechanism** - 18:21

**mediation** [2] - 23:4, 23:7

**mediator** [1] - 23:11

**merits** [5] - 18:17, 18:25, 19:14, 20:5, 21:18

**message** [1] - 10:25

**minutes** [1] - 18:6

**mission** [1] - 22:2

**mistake** [1] - 20:4

**mistakes** [1] - 7:17

**Monday** [1] - 1:11

**monetary** [1] - 21:4, 21:7

**money** [1] - 21:10, 21:11

**most** [2] - 16:17, 16:18

**MOTION** [1] - 1:10

**motion** [2] - 2:13, 2:25

**move** [4] - 7:14, 8:5, 13:1, 23:10

**moving** [1] - 18:24

**MR** [71] - 2:6, 2:9, 3:5, 3:16, 3:23, 4:4, 4:9, 4:12, 4:17, 5:1, 5:10, 5:21, 6:9, 6:12, 6:16, 6:19, 6:22, 7:2, 7:7, 7:10, 7:19, 7:25, 8:14, 8:23, 9:5, 9:9, 9:17, 9:21, 9:22, 9:25, 10:11, 10:21, 11:4, 11:8, 11:13, 11:24, 12:3, 12:7, 12:12,

12:22, 12:24, 13:4, 13:9, 13:14, 13:20, 13:23, 14:2, 14:6, 14:8, 14:14, 15:1, 15:3, 15:6, 15:12, 15:23, 16:1, 16:6, 16:9, 16:12, 16:15, 16:21, 17:7, 17:12, 17:18, 17:24, 18:2, 23:1, 23:3, 23:6, 23:9, 23:14

**multiple** [2] - 12:18, 17:15

**N**

**national** [2] - 19:4, 21:22

**need** [1] - 5:13

**needs** [1] - 16:24

**new** [1] - 2:19

**news** [1] - 3:9

**next** [2] - 18:8, 22:14

**night** [1] - 2:20

**NO** [1] - 1:5

**non** [1] - 16:17

**none** [1] - 23:1

**nonetheless** [1] - 12:19

**nonimmigrant** [2] - 10:6, 11:13

**nothing** [1] - 16:6

**notice** [11] - 2:14, 3:23, 4:23, 5:7, 9:14, 9:19, 10:1, 10:3, 19:12, 19:17, 22:1

**notified** [1] - 19:7

**notify** [1] - 9:22

**number** [4] - 3:22, 5:6, 8:2, 8:11

**NW** [2] - 1:18, 1:24

**O**

**obviously** [2] - 3:10, 3:18

**occurred** [5] - 3:17, 3:18, 4:13, 5:11, 10:16

**OF** [2] - 1:1, 1:10

**Office** [1] - 1:17

**OFFICIAL** [1] - 24:9

**Official** [2] - 1:23, 24:2

**one** [5] - 2:16, 3:7, 4:2, 4:4, 7:22

**operational** [3] - 14:16, 15:9, 15:11

**opportunity** [3] - 19:12, 19:17, 21:18

**opposition** [1] - 22:18

**OPT** [4] - 12:15, 12:20, 18:1, 18:4

**optional** [2] - 20:25, 22:4

**oral** [1] - 18:7

**Order** [1] - 2:1

**order** [12] - 2:13, 2:23, 18:8, 18:14, 18:16, 18:22, 21:16, 21:19, 21:24, 22:13, 22:14, 23:16

**orders** [1] - 2:19

**ordinarily** [1] - 21:5

**ordinary** [1] - 21:7

**original** [1] - 24:3

**otherwise** [1] - 8:10

**outside** [2] - 12:7, 15:16

**own** [1] - 22:8

**P**

**p.m** [6] - 1:11, 2:1, 18:9, 23:18

**page** [3] - 10:2, 18:2, 24:4

**paper** [1] - 9:21

**papers** [1] - 22:17

**paragraph** [2] - 5:2, 10:4

**particularly** [1] - 21:20

**parties** [1] - 19:1

**party** [2] - 18:24, 21:20

**past** [2] - 6:7, 7:6

**Patel** [1] - 7:22

**pattern** [1] - 4:18

**pending** [1] - 2:16

**performing** [1] - 12:14

**period** [3] - 4:20, 4:22, 18:16

**permitted** [1] - 17:25

**perspective** [1] - 18:1

**picked** [1] - 20:21

**place** [2] - 14:21, 15:15

**Plaintiff** [1] - 1:4

**plaintiff** [30] - 2:5, 2:7, 2:15, 5:23, 6:4, 6:17, 9:15, 13:2, 14:5, 14:11, 14:24, 15:4, 15:18, 15:21, 15:25, 16:4, 18:23, 19:2, 20:2, 20:4, 20:17, 20:19, 20:20, 20:23,

21:8, 21:12, 21:15, 22:5, 22:19, 23:1
**PLAINTIFF** [1] - 1:13
**plaintiff's** [9] - 2:12, 2:25, 9:17, 9:22, 17:5, 19:15, 20:9, 20:15, 21:21
**plaintiffs** [1] - 22:16
**plays** [1] - 4:17
**podium** [2] - 3:1, 17:21
**point** [4] - 8:9, 8:12, 8:17, 17:23
**poised** [1] - 20:7
**poses** [1] - 21:22
**position** [11] - 3:16, 5:23, 6:9, 7:7, 13:8, 13:9, 13:11, 13:18, 13:21, 13:25, 15:24
**possible** [1] - 3:8
**practical** [6] - 12:20, 15:25, 16:5, 17:22, 20:25, 22:4
**preliminary** [3] - 22:15, 22:16, 22:20
**preparation** [2] - 6:21, 6:25
**prescheduled** [1] - 23:4
**presence** [1] - 21:22
**present** [2] - 16:23, 17:1
**presented** [1] - 21:21
**preserve** [2] - 18:15, 21:16
**prevent** [2] - 18:16, 21:17
**previously** [1] - 5:22
**principles** [1] - 22:2
**problem** [1] - 23:15
**Procedure** [1] - 19:19
**proceedings** [6] - 5:15, 7:16, 14:21, 15:15, 17:2, 19:15
**Proceedings** [1] - 23:18
**Produced** [1] - 1:25
**program** [3] - 22:3, 22:5, 23:7
**pronounced** [1] - 3:5
**pronunciation** [1] - 3:8
**prosecution** [1] - 14:22
**provide** [5] - 7:13, 19:10, 19:21, 21:11, 22:22
**provided** [2] - 11:20, 12:3

**providing** [1] - 22:6
**public** [2] - 19:2, 21:15
**purpose** [2] - 8:14, 21:16
**purposes** [1] - 22:6
**pursuing** [1] - 18:1
**put** [2] - 16:24, 17:1

### Q

**questions** [13] - 2:21, 4:13, 5:16, 5:18, 6:1, 6:5, 9:11, 11:25, 16:19, 17:19, 18:13, 22:22, 22:25
**quite** [1] - 20:19
**quo** [2] - 18:15, 21:17
**quote** [4] - 19:24, 22:8, 22:11
**quoting** [1] - 7:23, 10:3

### R

**RDR** [1] - 24:8
**RDR-CRR** [1] - 24:8
**read** [4] - 5:5, 5:14, 5:20
**reading** [2] - 10:4, 10:18
**Realtime** [1] - 1:23
**reason** [3] - 18:20, 20:2, 22:1
**reasonably** [1] - 20:19
**reasoning** [1] - 19:12
**reasons** [2] - 21:12, 21:23
**received** [5] - 4:18, 4:23, 5:7, 9:5, 16:11
**recent** [5] - 2:17, 3:3, 3:12, 7:17, 19:22
**recess** [2] - 2:22, 18:6
**Recessed** [1] - 18:9
**Record** [1] - 1:25
**record** [16] - 2:5, 8:3, 10:5, 10:19, 11:4, 11:7, 11:12, 13:6, 13:8, 13:12, 13:16, 13:19, 18:10, 19:17, 20:3, 24:4
**records** [2] - 10:7, 11:8
**REDDY** [1] - 1:3
**Reeves** [2] - 24:2, 24:8
**REEVES** [1] - 1:22,

24:8
**referenced** [1] - 5:2
**Registered** [1] - 1:22
**regulations** [2] - 10:15, 24:4
**remain** [2] - 22:9, 22:10
**remedy** [1] - 18:23
**removal** [3] - 14:21, 15:15, 17:2
**rendered** [1] - 10:14
**repairable** [1] - 21:7
**reply** [1] - 22:19
**Reporter** [4] - 1:22, 1:23, 1:23, 24:2
**REPORTER** [1] - 24:9
**reporting** [1] - 3:9
**represented** [2] - 12:16, 12:17
**representing** [3] - 6:15, 6:16, 11:19
**represents** [1] - 20:15
**require** [1] - 22:14
**rescrubbing** [2] - 7:23, 19:24
**residence** [1] - 21:3
**responded** [1] - 12:2
**response** [5] - 9:5, 9:8, 11:21, 12:3, 16:11
**restate** [2] - 5:13, 5:19
**restraining** [6] - 2:13, 18:14, 18:22, 21:16, 21:19, 21:24
**resulting** [1] - 21:4
**reviewed** [1] - 2:13
**reviewing** [1] - 5:17
**revocation** [2] - 10:7, 17:8
**revoke** [1] - 8:8
**revoked** [6] - 4:21, 4:24, 5:7, 13:24, 15:7, 21:25
**Reyes** [1] - 14:16
**risk** [1] - 18:19
**rule** [2] - 2:23, 21:18
**ruling** [1] - 18:7
**runs** [1] - 22:1
**Rutledge** [1] - 1:14

### S

**safety** [1] - 20:19
**Salvador** [1] - 20:21
**satisfied** [1] - 17:16
**school** [1] - 18:1
**schools** [7] - 11:1,

12:4, 12:10, 12:12, 12:19, 12:22, 12:24
**second** [1] - 9:4
**security** [1] - 21:22
**see** [2] - 5:3, 23:17
**SEEVIS** [2] - 3:6, 3:7
**send** [1] - 10:25
**sent** [1] - 10:2
**sentence** [3] - 10:4, 10:18, 10:19
**series** [1] - 20:7
**Services** [2] - 10:13, 10:22
**session** [1] - 23:6
**SEVIS** [25] - 2:17, 3:3, 3:4, 3:6, 4:11, 8:6, 8:7, 8:9, 8:14, 8:18, 10:5, 10:9, 10:19, 10:25, 11:4, 11:7, 11:12, 12:5, 13:3, 17:7, 19:8, 19:17, 19:22, 20:6, 20:15
**shoplifting** [1] - 13:17
**shortly** [2] - 9:15, 23:17
**shown** [1] - 20:4
**side** [1] - 22:25
**sides** [2] - 2:14, 2:21
**sit** [1] - 16:14
**someone** [2] - 15:15, 16:22
**Sonja** [2] - 24:2, 24:8
**SONJA** [2] - 1:22, 24:8
**SOOKNANAN** [1] - 1:10
**sorry** [1] - 23:9
**South** [1] - 1:15
**SPARKLE** [1] - 1:10
**speaking** [1] - 5:1
**specific** [1] - 10:21
**specifically** [1] - 11:25
**speculate** [1] - 20:2
**stage** [1] - 19:15
**standing** [2] - 14:9, 19:20
**start** [3] - 2:24, 3:2, 3:14
**starting** [2] - 2:5, 19:14
**state** [1] - 15:13
**State** [7] - 4:19, 4:23, 5:7, 5:9, 19:8, 22:4, 22:8
**STATES** [1] - 1:1
**states** [1] - 22:8
**States** [21] - 1:17,

8:15, 14:1, 14:5, 14:10, 14:12, 14:25, 15:5, 15:19, 15:21, 16:23, 17:1, 19:5, 19:12, 20:18, 21:1, 21:11, 21:24, 22:11, 24:2, 24:5
**status** [30] - 8:7, 8:8, 8:9, 8:12, 10:6, 10:10, 10:20, 11:3, 11:9, 11:10, 11:14, 12:5, 12:10, 12:19, 13:2, 13:22, 15:7, 17:6, 17:8, 18:4, 18:15, 19:7, 20:10, 20:15, 20:16, 20:25, 21:12, 21:17, 21:25
**Stenographic** [1] - 1:25
**stenographic** [1] - 24:3
**steps** [2] - 18:8, 22:14
**stop** [1] - 12:19
**stopped** [1] - 18:1
**straight** [1] - 20:13
**Street** [1] - 1:18
**student** [6] - 11:1, 11:2, 12:13, 18:18, 19:6, 19:11
**student's** [1] - 8:7
**students** [8] - 4:15, 5:9, 6:7, 7:5, 12:20, 19:9, 22:7, 22:10
**students'** [3] - 4:24, 8:11, 12:19
**studies** [3] - 12:14, 15:25, 16:5
**study** [1] - 22:10
**studying** [1] - 19:5
**substantially** [1] - 19:1
**succeed** [1] - 18:25
**success** [2] - 19:14, 20:5
**sudden** [1] - 19:10
**sued** [1] - 6:17
**suggesting** [1] - 19:25
**supplemental** [2] - 2:15, 9:14
**supposed** [1] - 14:12
**system** [3] - 11:8, 11:12, 19:8

### T

**temporary** [6] - 2:13, 18:14, 18:22, 21:16, 21:18, 21:23

**ten** [3] - 4:7, 18:6, 19:20

**terminated** [14] - 6:7, 7:6, 8:4, 8:10, 8:12, 8:18, 10:6, 11:2, 12:6, 12:11, 13:2, 13:6, 19:7, 20:3

**terminating** [1] - 8:7

**termination** [14] - 3:12, 3:15, 3:17, 7:18, 10:9, 10:25, 17:8, 19:10, 19:16, 19:24, 20:6, 20:9, 20:10, 20:16

**terminations** [5] - 2:17, 3:3, 4:11, 8:6, 19:22

**terms** [1] - 22:14

**testimony** [3] - 7:21, 8:1, 19:23

**Texas** [1] - 18:3

**THE** [76] - 1:1, 1:10, 1:13, 1:17, 2:8, 2:11, 3:2, 3:7, 3:20, 4:1, 4:7, 4:10, 4:15, 4:23, 5:4, 5:13, 5:25, 6:11, 6:14, 6:17, 6:20, 6:24, 7:4, 7:8, 7:12, 7:21, 8:5, 8:17, 8:25, 9:7, 9:10, 9:19, 10:1, 10:17, 10:24, 11:6, 11:11, 11:15, 12:2, 12:4, 12:9, 12:16, 12:23, 13:1, 13:7, 13:11, 13:16, 13:21, 13:25, 14:4, 14:7, 14:9, 14:23, 15:2, 15:4, 15:10, 15:17, 15:24, 16:3, 16:8, 16:11, 16:13, 16:16, 17:4, 17:10, 17:14, 17:19, 17:22, 17:25, 18:5, 18:12, 23:2, 23:5, 23:8, 23:13, 23:15

**threat** [1] - 21:22

**timeline** [1] - 3:19

**Title** [1] - 23:4

**today** [8] - 2:24, 7:14, 8:21, 11:19, 14:9, 17:6, 19:20, 22:23

**TODD** [1] - 1:6

**tomorrow** [1] - 20:22

**track** [2] - 8:15, 19:9

**training** [4] - 12:21, 17:23, 20:25, 22:4

**transcript** [3] - 24:3, 24:3, 24:4

**Transcript** [1] - 1:25

**TRANSCRIPT** [1] - 1:10

**transcripts** [1] - 5:14

**trigger** [1] - 20:7

**triggered** [1] - 4:11

**TRO** [3] - 1:10, 18:20, 18:25

**TROs** [1] - 18:15

**true** [4] - 8:9, 21:8, 21:20, 24:3

**trying** [2] - 6:5, 7:12

**turning** [1] - 20:6

**twin** [1] - 22:6

**two** [3] - 3:22, 4:21, 19:6

**type** [1] - 17:13

### U

**U.S** [2] - 1:6, 22:8

**unable** [1] - 4:12

**unacceptable** [1] - 20:18

**under** [1] - 19:5

**underlying** [1] - 21:15

**UNITED** [1] - 1:1

**United** [21] - 1:17, 8:15, 14:1, 14:5, 14:10, 14:11, 14:25, 15:5, 15:18, 15:21, 16:23, 17:1, 19:5, 19:11, 20:18, 21:1, 21:11, 21:24, 22:11, 24:2, 24:5

**universities** [1] - 22:9

**University** [1] - 18:3

**university** [2] - 19:7, 20:24

**unlawfully** [1] - 17:1

**up** [3] - 2:23, 11:1, 20:21

**uses** [1] - 19:8

### V

**valid** [3] - 14:1, 14:25, 19:6

**validity** [2] - 4:20, 4:22

**validly** [1] - 18:19

**various** [1] - 11:22

**versus** [3] - 2:3, 7:22, 18:11

**VII** [1] - 23:4

**violation** [1] - 19:18

**visa** [11] - 4:19, 4:20, 4:21, 4:22, 8:8, 8:16, 10:8, 14:1, 14:25,

19:6, 22:6

**visas** [3] - 4:24, 5:8

**vs** [1] - 1:5

### W

**Washington** [1] - 1:12, 1:19, 1:24

**Watson** [2] - 7:23, 14:15

**ways** [1] - 20:23

**website** [1] - 22:8

**Wednesday** [1] - 23:17

**week** [2] - 7:22, 11:17

**weeks** [3] - 6:8, 7:6, 19:6

**whatsoever** [2] - 12:18, 20:11

**witnesses** [1] - 22:24

**works** [1] - 17:4

**written** [3] - 2:23, 18:8, 22:13

**wrote** [1] - 10:23

### Y

**yourselves** [1] - 2:4